489 S.E.2d 15

**LAWYER DISCIPLINARY BOARD, Complainant**

v.

**Thomas H. McCORKLE, a Suspended Member of the West Virginia State Bar, Respondent.**

**No. 22952.**

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997.

Decided June 19, 1997.

Steven Johnston Knopp, Lawyer Disciplinary Council, Charleston, for Complainant.

Thomas H. McCorkle, Charleston, Pro Se.

PER CURIAM:

This disciplinary proceeding was instituted by the complainant, Office of Disciplinary Counsel (hereinafter "ODC") of the West Virginia State Bar, against the respondent, Thomas H. McCorkle, a suspended

member of the Bar.[1] ODC filed three ethics charges against Mr. McCorkle. However, the Lawyer Disciplinary Board (hereinafter the "Board") found that ODC proved only two ethical violations. The Board found Mr. McCorkle (1) failed to adequately document expenses advanced by a client and (2) failed to provide an itemization of the advanced expenses.[2] The Board recommends that this Court admonish Mr. McCorkle and assess the costs of this proceeding against him. Based on our review of the record, we find that Mr. McCorkle is guilty of ethical violations and impose the following sanctions: (1) two year supervision, (2) admonishment, and (3) costs of the proceeding.

## I.

The proceeding against Mr. McCorkle involved his representation of one client, Mary Jane Means. Mrs. Means sought legal representation as administratrix of the estate of her daughter and daughter's son, both of whom were killed in a boating accident. On October 13, 1985, Mr. McCorkle and an attorney he engaged to assist him, James V. Brown (now deceased), entered into a contingent fee contract with Mrs. Mean. The agreement entitled the attorneys to 35% of any recovery from the wrongful death claims.[3]

During the pending litigation, the reported father of the deceased child, Mr. John Gandy, entered the case. Mr. Gandy was represented by independent counsel.

On February 16, 1989, the wrongful death claims were settled. The total amount of the settlement was $580,000.00. Mrs. Means received $362,000.00. Mr. Gandy received the balance of the settlement. After deduction of legal fees and costs, Mrs. Means received $217,250.00. All attorneys involved in the case received the sum of $144,750.00.

Mrs. Means eventually retained new counsel to determine whether she was overcharged by Mr. McCorkle. After all efforts to resolve the fee dispute failed, Mrs. Means filed suit against Mr. McCorkle in 1991. On May 2, 1995, a judgment against Mr. McCorkle was entered in the amount of $4,000.00.[4]

ODC charged Mr. McCorkle with violating Rule 1.15(b) of the Rules of Professional Conduct (R.P.C.) in failing to honor a settlement agreement to pay Mrs. Mean the overcharged money.[5] The Board determined that ODC failed to prove that Mr. McCorkle agreed to settle the fee dispute case. The Board further found that the evidence was insufficient to prove that Mrs. Means was actually overcharged.

ODC also charged Mr. McCorkle with violating Rule 1.15(b) by failing and refusing to provide an itemization of expenses and general distribution of settlement proceeds to Mrs. Means. In conjunction with this charge, ODC also charged Mr. McCorkle with violating Rule 1.15(a) by failing to maintain financial records to document expenses

---

1. Mr. McCorkle's law license was suspended by this Court on December 18, 1994, for illegal cocaine use, improper solicitation of clients, and testifying falsely before the Board. The suspension was for two years. *See Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). "Prior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust." Syl. Pt. 5, *Committee on Legal Ethics of West Virginia State Bar v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986).

2. This case was heard by a Hearing Panel Subcommittee of the Board.

3. Mr. McCorkle eventually engaged the law firm of Lewis, Ciccarello & Friedberg to assist in the prosecution of the wrongful death claims.

4. The judgment was divided as follows: $3,500.00 balance of alleged settlement agreement between Mrs. Means and Mr. McCorkle; $500.00 for attorney fees. The record indicates that Mr. McCorkle was not present at the hearing. Mr. McCorkle unsuccessfully sought to set aside the judgment.

5. Rule 1.15(b) provides:

 (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

advanced for investigative services during his representation of Mrs. Means.[6]

Mr. McCorkle testified before the Board that the records in connection with the latter two charges were in the possession of Mr. Brown. He contended he was unable to retrieve the records after Mr. Brown's death. The Board rejected Mr. McCorkle's defense that he had no independent obligation to maintain records. The Board determined the charges involving the records were proven. The Board recommended Mr. McCorkle be admonished and pay the costs of this proceeding. Neither Mr. McCorkle nor ODC objected to the Board's recommendations.

## II.

 The standard of review applicable to this matter was set out by this court in syllabus point 3 of *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995), wherein we held that:

> ''A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.' Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).' Syllabus Point 2, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995).

*See* Syl. Pt. 2, *Committee on Legal Ethics of the West Virginia State Bar v. Keenan*, 189 W.Va. 37, 427 S.E.2d 471 (1993) (" 'Absent a

showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the [Board] ... are to be given substantial consideration.' Syllabus Point 3, in part, In re Brown, 166 W.Va. 226, 273 S.E.2d 567 (1980)"). Although we give deference to the Board's findings, " ' ' '[t]his Court is the final arbiter of legal ethic problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syl. Point 3, *Committee on Legal Ethics v. Blair*, [174] W.Va. [494] 327 S.E.2d 671 (1984).' Syl. pt. 1, *Committee on Legal Ethics v. Charonis*, 184 W.Va. 268, 400 S.E.2d 276 (1990).' Syl. pt. 1, *Committee on Legal Ethics v. Ikner*, 190 W.Va. 433, 438 S.E.2d 613 (1993)." Syl. pt. 7, *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994).

 We have previously held that " '[t]he [Rules of Professional Conduct] state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.' Syllabus Point 3, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984)." Syllabus Point 9, *Committee on Legal Ethics v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993). In syllabus point 2 of *Committee on Legal Ethics of the West Virginia State Bar v. White*, 189 W.Va. 135, 428 S.E.2d 556 (1993) we stated that

> ' '[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358

---

6. Rule 1.15(a) provides:

 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situat-

ed, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

S.E.2d 234 (1987).' Syllabus Point 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

In syllabus point 1 of *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) we held, in part, that "Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence."

■ In the matter *sub judice* Mrs. Means alleged that Mr. McCorkle overcharged her. The overcharged related to a double billing of $1,000.00 for drafting a trust agreement, stemming from the settlement in the wrongful death action. It was also alleged that Mr. McCorkle's expenses of $9,352.63 were excessive compared to the expenses of the law firm that worked as lead counsel on the case (the law firm's expenses totaled $5,080.70).

Mrs. Means alleged that after she filed the law suit against Mr. McCorkle, they entered into a settlement agreement whereby he agreed to pay her $4,000.00. The record is not disputed that Mr. McCorkle paid Mrs. Means $500.00 during the litigation against him. Mr. McCorkle contends, however, that he did not agree to settle the action.

Mrs. Means obtained a hearing in the circuit court of Kanawha County to enforce the settlement agreement. Mr. McCorkle did not appear at the hearing. A judgment was rendered against him for the balance of the settlement proposal. Mr. McCorkle unsuccessfully attempted to have the judgment set aside.

ODC charged Mr. McCorkle with violating Rule 1.15(b) for failing to pay the alleged settlement. The Board found the evidence was not clear and convincing that Mr. McCorkle, in fact, agreed to settle the claim. We decline to disturb the Board's ruling on this issue.

The Board's finding that Mr. McCorkle failed to adequately document expenses in violation of Rule 1.15(a) is supported by clear and convincing evidence. The Board's finding that Mr. McCorkle violated Rule 1.15(b) by failing to promptly provide Mrs. Means with an itemization of expenses from the wrongful death action, is also supported by the evidence. However, we are not convinced the Board's recommendation of admonishment and assessment of costs are sufficient sanctions.

## III.

This Court finds that Mr. McCorkle violated the Rules of Professional Conduct as found by the Board. We, therefore, order that Mr. McCorkle (1) be admonished, (2) that immediately upon his reinstatement to the State Bar, he is to be supervised for a period of two years by an attorney licensed in this State and approved by the Hearing Panel Subcommittee of the Lawyer Disciplinary Board, (3) the supervision plan shall be submitted to and approved by the aforesaid Subcommittee and (4) Mr. McCorkle shall pay all costs incurred in the investigation and hearing of this matter.

Admonished, two year supervision, and payment of costs.