633 S.E.2d 1

**LAWYER DISCIPLINARY
BOARD, Petitioner,**

v.

**Thomas H. McCORKLE, a suspended
member of The West Virginia
State Bar, Respondent.**

No. 25321.

Supreme Court of Appeals of
West Virginia.

Submitted: March 14, 2006.

Decided: June 8, 2006.

Richard E. Rowe, Esq., Special Disciplinary Counsel, Goodwin & Goodwin, L.L.P., Charleston, for the Petitioner.

Respondent Thomas H. McCorkle, Esq., Charleston, *pro se.*

PER CURIAM.

This lawyer disciplinary matter concerning respondent Thomas H. McCorkle is before this Court upon the recommended decision of the Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board: (1) that respondent McCorkle's license to practice law in West Virginia be annulled, (2) that, as a prerequisite to reinstatement, he shall be certified by an independent health care professional in the appropriate field that he is in such condition that his ability to practice law will result in the protection of the public and (3) that he reimburse the Lawyer Disciplinary Board for the costs of these proceedings. Respondent McCorkle was admitted to practice in West Virginia in 1982. However, as discussed below, he is currently under suspension from the practice of law in this State for separate and previously adjudicated violations of the West Virginia Rules of Professional Conduct.

The recommended decision in this proceeding arose from a two-count statement of charges filed in this Court by the Investigative Panel of the Lawyer Disciplinary Board. Count 1 alleged that, in response to a legal ethics complaint and in response to a discovery request in a defamation action, the respondent, through the submission of altered checks, misrepresented his claim that he had advanced certain expenses in an underlying medical malpractice action. Count 2, an unrelated matter concerning a trust fund that the respondent established for the benefit of

a client, alleged that the respondent, as trustee, neglected to maintain a complete record of the trust fund account and diverted monies therefrom for his personal use. Following an evidentiary hearing, the Hearing Panel Subcommittee found that both counts were proven and constituted transgressions of the Rules of Professional Conduct. The recommended decision was filed in this Court on October 13, 2005. Thereafter, the respondent filed an objection asserting, *inter alia,* that the Subcommittee's findings were not supported by clear and convincing evidence as required by Rule 3.7. of the West Virginia Rules of Lawyer Disciplinary Procedure and that the sanction of annulment is too harsh.

This Court has before it the recommended decision of the Hearing Panel Subcommittee, all matters of record and the briefs filed by the parties. Upon review by this Court, *de novo,* and for the reasons stated herein, including the existence of aggravating circumstances in the form of previously adjudicated disciplinary violations, some of which resulted in the respondent's suspension from the practice of law, this Court adopts the recommended decision filed by the Subcommittee and the sanctions set forth therein.

## I.

### Prior Disciplinary Proceedings

As indicated above, prior disciplinary proceedings have been instituted against respondent McCorkle resulting in sanctions imposed by this Court. In *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), ("*McCorkle 1*"), the appellant was charged with: (1) drug and alcohol abuse,[1] (2) the improper solicitation of clients and (3) the presenting of false testimony before the Hearing Panel Subcommittee. Upon review, determining that the charges were proven by clear and convincing evidence, this Court suspended the respondent's

license to practice law in West Virginia for two years and directed that he obtain treatment and counseling for his drug and alcohol problems. Moreover, rather than permitting automatic reinstatement, this Court made clear that McCorkle must file an application for reinstatement to the practice of law. To date, no such application has been filed.

In *McCorkle 1,* the solicitation and false testimony charges were related. The evidence indicated that respondent McCorkle used a hospital emergency room employee to contact accident victims upon his behalf. McCorkle then telephoned the victims at home seeking to represent them. In response, McCorkle asserted that he had received various telephone messages to call the accident victims and that, therefore, he was merely making return calls. However, upholding a finding that McCorkle testified falsely concerning the telephone calls, this Court stated: "Mr. McCorkle presented false testimony to the Committee when he claimed he was returning phone calls to Mrs. Scarbro and to the Hudnall residence. Furthermore, we agree with the Committee's finding that the phone message he produced was manufactured to support his claim." 192 W.Va. at 293, 452 S.E.2d at 384. *McCorkle 1* suggests that such conduct constitutes a serious transgression of the rules of ethics pertaining to lawyers.

A second disciplinary proceeding against the respondent resulted in this Court's decision in *Lawyer Disciplinary Board v. McCorkle,* 200 W.Va. 261, 489 S.E.2d 15 (1997), ("*McCorkle 2*"). Therein, the respondent was hired by an administratrix (prior to his suspension) to pursue two wrongful death claims. As the Lawyer Disciplinary Board determined, however, McCorkle failed to maintain financial records to document the expenses the administratrix advanced. Moreover, he failed to provide her with an

---

1. The opinion in *McCorkle 1* states that the respondent's drug abuse stemmed from his use of alcohol and that in 1992 he entered a plea of guilty to possession of cocaine. 192 W.Va. at 291, 452 S.E.2d at 382. In the proceeding now before this Court, the respondent submitted evidence to the effect that he has since been in rehabilitation and that his prospects for a complete recovery from drug, alcohol and other

health problems are good. According to Dr. John P. MacCallum, the respondent's treating psychiatrist, the respondent's other health problems included depression, hypertension and thyroiditis (inflammation of the thyroid gland). Dr. MacCallum indicated to the Hearing Panel Subcommittee that the respondent has made significant changes in his life and is motivated to conduct himself in an appropriate manner.

itemized statement of expenses. Finding that the Board's determination was supported by clear and convincing evidence, this Court, in *McCorkle 2*, ordered that the respondent be admonished and that his practice, upon his reinstatement, be supervised for two years.

## II.

### Current Disciplinary Proceedings

As indicated above, Count 1 of the statement of charges filed by the Investigative Panel alleged that, in response to a legal ethics complaint and in response to a discovery request in a defamation action, the respondent, through the submission of altered checks, misrepresented his claim that he had advanced certain expenses in an underlying medical malpractice action. The malpractice action concerned complications in the delivery of a baby where the mother, Lisa Crooks, had been in a motor vehicle accident and had gone into early labor. According to respondent McCorkle, he and attorney James M. Pierson represented Ms. Crooks and had a fee-sharing arrangement with regard to her malpractice claim. Pierson disputed the existence of the arrangement and when, upon settlement of the action, no portion of the fee was shared with the respondent, an on-going conflict arose between the respondent and Pierson. McCorkle allegedly accused Pierson's secretary of misconduct, and she filed an ethics complaint against him with the West Virginia State Bar and a defamation action in the Circuit Court of Kanawha County.

In both proceedings, McCorkle attempted to prove the fee-sharing arrangement concerning the underlying malpractice claim by asserting that he had paid various expenses during the course of the litigation. In that regard, McCorkle submitted to the Office of Disciplinary Counsel and in response to a request for the production of documents in the defamation action, two $500 checks from his office made out to Pierson Legal Services. The memo line of check no. 2842 contained the phrase "Crooks Case," and the memo line of check no. 2290 contained the phrase "Expenses in Crooks Case." Bank microfilm established, however, that at the time the checks were negotiated by Pierson the memo lines contained no such phrases, thus suggesting that the checks had been subsequently altered. According to the Investigative Panel, respondent McCorkle gave false testimony concerning the two checks in both the ethics proceeding and the defamation action.

With regard to Count 2, respondent McCorkle represented Eleanor Dawson who was severely injured and required extended care as a result of a motor vehicle accident in March 1991. Upon receiving a partial settlement of $100,000, McCorkle created a Trust Agreement for the benefit of Ms. Dawson, pending the outcome of a related products liability claim. Dawson had no other income, and the Trust Agreement named McCorkle as Trustee.

The Trust account was opened in June 1991 and, after a number of checks were written by McCorkle, the account, on July 22, 1991, contained a balance of approximately $18,500. According to the Investigative Panel, the respondent produced very little by way of financial records to show how the money had been spent. Following McCorkle's suspension in 1994, the products liability claim was settled by attorney James M. Pierson, and the Trust Agreement terminated. During the existence of the Trust, the respondent engaged in a wide variety of transactions concerning the account, including the making of both deposits and withdrawals. According to the Investigative Panel, however, McCorkle diverted money from the account to make a $575 rent payment for his residence and to loan $15,000 to a friend.

On December 5, 2003, the Hearing Panel Subcommittee conducted an evidentiary hearing upon the statement of charges and, on October 13, 2005, filed its recommended decision containing findings of fact and conclusions of law with this Court. The Subcommittee found that the charges had been proven. With regard to Count 1, the Subcommittee concluded that, by submitting the checks to the Office of Disciplinary Counsel and by misrepresenting that the memo lines thereof had been completed prior to negotiation, McCorkle violated Rule 8.1.(a) of the

West Virginia Rules of Professional Conduct which states that a lawyer shall not "knowingly make a false statement of material fact" in connection with a disciplinary matter. The Subcommittee further concluded that by engaging in similar conduct in the defamation action, McCorkle violated Rule 3.4.(b) which states that a lawyer shall not "falsify evidence" and Rule 8.4.(c) and (d) stating that it is professional misconduct for a lawyer to engage in conduct involving "dishonesty, fraud, deceit or misrepresentation" or conduct that is "prejudicial to the administration of justice."

As to Count 2 concerning the Dawson Trust Agreement, the Subcommittee found that, by abusing his authority as Trustee and by neglecting to maintain a complete record of the trust fund account, McCorkle violated Rule 1.7.(b) which provides that a lawyer shall not represent a client if the representation may be materially limited "by the lawyer's own interests," Rule 1.8.(a) stating that a lawyer shall not "knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client," Rule 1.15.(a) stating that a lawyer shall hold the property of a client separate from the lawyer's own property and shall keep "complete records" of the client's account funds and Rule 8.4.(c) stating that it is professional misconduct for a lawyer to engage in conduct involving "dishonesty, fraud, deceit or misrepresentation."

Upon the above conclusions and determining that McCorkle's prior disciplinary adjudications, *McCorkle 1* and *McCorkle 2*, constituted aggravating factors, the Hearing Panel Subcommittee recommended: (1) that respondent McCorkle's license to practice law in West Virginia be annulled, (2) that, as a prerequisite to reinstatement, he shall be certified by an independent health care professional in the appropriate field that he is in

such condition that his ability to practice law will result in the protection of the public and (3) that he reimburse the Lawyer Disciplinary Board for the costs of these proceedings.[2] McCorkle filed an objection to the Subcommittee's recommended decision, and the case was submitted to this Court for review.

## III.

### Standard of Review

In *McCorkle 1*, this Court took the opportunity to "resolve any doubt as to the applicable standard of review" in lawyer disciplinary cases. 192 W.Va. at 289, 452 S.E.2d at 380. Thus, syllabus point 3 of *McCorkle* holds:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 1, *Lawyer Disciplinary Board v. Lakin*, 217 W.Va. 134, 617 S.E.2d 484 (2005); syl. pt. 1, *Lawyer Disciplinary Board v. Lusk*, 212 W.Va. 456, 574 S.E.2d 788 (2002); syl. pt. 3, *Lawyer Disciplinary Board v. Barber*, 211 W.Va. 358, 566 S.E.2d 245 (2002); syl. pt. 2, *Lawyer Disciplinary Board v. Turgeon*, 210 W.Va. 181, 557 S.E.2d 235 (2000).

**2.** Rule 3.15. of the West Virginia Rules of Lawyer Disciplinary Procedure provides:

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14. [entitled "Grounds for discipline"]: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice;

(5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State. As syllabus point 3 of *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985), holds: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 2, *Barber, supra*; syl. pt. 3, *Lawyer Disciplinary Board v. Frame*, 198 W.Va. 166, 479 S.E.2d 676 (1996). *See also*, 2A M.J. *Attorney and Client* § 55 (1993), stating that the Supreme Court of Appeals of West Virginia "is the final arbiter of legal ethics problems."

Rule 3.7. of the West Virginia Rules of Lawyer Disciplinary Procedure provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *Lusk, supra*, 212 W.Va. at 461, 574 S.E.2d at 793; syl. pt. 2, *Lawyer Disciplinary Board v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15., *see* n. 2, *supra*, and, in making a recommendation or imposing discipline, certain factors are to be considered pursuant to Rule 3.16. As syllabus point 4 of *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998), holds:

> Rule 3.16. of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [Supreme Court of Appeals of West Virginia] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount

of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 2, *Lakin, supra*; syl. pt. 4, *Lawyer Disciplinary Board v. Battistelli*, 206 W.Va. 197, 523 S.E.2d 257 (1999). *See also*, syl. pt. 3, *Lawyer Disciplinary Board v. Keenan*, 208 W.Va. 645, 542 S.E.2d 466 (2000).

## IV.

### Discussion

With regard to Count 1, the record indicates that, after the two checks were negotiated by Pierson, the memo lines thereof were altered to read "Crooks Case" and "Expenses in Crooks Case." Respondent McCorkle asserts, however, that the alterations were made by his secretary after the checks were negotiated in an attempt to assist him in reconstructing the actual expenses he advanced during the course of the Crooks litigation.[3] According to McCorkle, the check stubs in the ledger already indicated that the checks were for expenses in the Crooks case and that, moreover, the alterations were made prior to the filing of the ethics proceeding and the defamation action.

The respondent's explanation is deprived of significance, however, because it materially differs from statements he made concerning the checks during the early stages of the ethics proceeding and in the defamation action. As the record demonstrates, McCorkle misrepresented, in both proceedings, that the memo lines were completed before negotiation. In March 1997, prior to the final hearing in this matter, the respondent sent copies of the checks, as altered, to the Office of Disciplinary Counsel with a cover letter indicating that they had been "negotiated by Pierson Legal Services." No suggestion was made in the letter that the alterations were subsequently made. Moreover, in his deposition of March 10, 1998, McCorkle, referring to the checks he sent Pierson, testified: "I write Crooks expense down at the bottom.

---

**3.** At the December 5, 2003, hearing before the Hearing Panel Subcommittee, the respondent's secretary, Carolyn A. Ball, testified as follows: "[A] lot of times I didn't make a notation on the

bottom of the check what the check was for, but I made it on the stub, and when I got the cancelled checks back, then I go ahead and make a notation on the check."

He would sign and put it in his account." Similarly, in response to a request for the production of documents in the defamation action filed in the Circuit Court of Kanawha County, the respondent submitted copies of the two checks as altered and without further explanation. In his April 14, 1997, deposition in that action, McCorkle indicated, contrary to the subsequent testimony of his secretary before the Hearing Panel Subcommittee, that the memo lines and check stubs were completed at the same time.[4] Based upon that evidence, the Hearing Panel Subcommittee properly concluded that respondent McCorkle committed violations of the Rules of Professional Conduct.

■ As to Count 2, the Trust Agreement concerning Eleanor Dawson is replete with limitations upon the Trustee's discretion in maintaining and disbursing the funds in the account. Pursuant to the Agreement, respondent McCorkle was directed to manage the account "for the benefit of Eleanor Dawson" and for her "support and maintenance." In addition, the Agreement provided that all powers of the Trustee were to be exercised "in a fiduciary capacity, primarily in the interest of the beneficiary" and that the borrowing of any monies in relation to the Trust was to be "incidental" to the Trustee's administration. Nevertheless, as the record confirms, McCorkle engaged in a wide variety of transactions concerning the account and, at one point, began paying for some of Ms. Dawson's expenses with his own money. With regard to the transactions, McCorkle acknowledged that Ms. Dawson's funds and his own were not consistently kept separate and that he could not produce complete records of expenditures from the Trust account.[5] The record reveals, however, that McCorkle diverted money from the Trust to make a $575 rent payment for his residence and to loan $15,000 to a friend.

At the hearing before the Hearing Panel Subcommittee, McCorkle submitted evidence to the effect that he had no intent to deprive Ms. Dawson of the Trust funds and that, over the duration of the Trust Agreement, Ms. Dawson received more money than originally contemplated. Nevertheless, while those circumstances may be considered by this Court, they do not invalidate the findings of the Hearing Panel Subcommittee based upon the evidence of record that the respondent abused his authority as Trustee and committed acts in that capacity adverse to Ms. Dawson and contrary to the express terms of the Trust Agreement. Nor did McCorkle maintain complete records of his transactions to show how the trust funds were spent. Thus, as to Count 2, the Hearing Panel Subcommittee properly concluded that respondent McCorkle committed violations of the Rules of Professional Conduct.

■ In this case, the Hearing Panel Subcommittee determined that the adjudications in *McCorkle 1* and *McCorkle 2* were aggravating factors to be considered in recommending sanctions to this Court concerning the respondent. *See,* Rule 3.16. of the Rules of Lawyer Disciplinary Procedure quoted in *Jordan, supra.* As this Court noted in syllabus point 4 of *Lawyer Disciplinary Board v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003): "Aggravating factors in a

---

4. During his deposition in the defamation action, McCorkle testified as follows:

> Q.   * * * And the way that you kept track of what these are for is you write down here on the memo what it's for and then you put it in the ledger—or not the ledger book but the check stub booklet?
> A.   That's right.

5. During the hearing before the Hearing Panel Subcommittee, McCorkle testified:

> Q.   * * * [Y]ou have made certain admission[s] in respect to one of the Counts.
> A.   Yes, I have.
> Q.   Could you tell us?
> A.   With respect to the Dawson matter, I think I admitted there was co-mingling of funds.

In addition, in his written closing argument filed after the December 5, 2003, hearing before the Hearing Panel Subcommittee, McCorkle stated that the evidence was subject to the interpretation that he did not retain Ms. Dawson's bank records for the requisite time period. As Rule 1.15.(a) of the Rules of Professional Conduct states in part: "Complete records of such [client] account funds ... shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation." McCorkle's representation of Ms. Dawson terminated in 1994 when he was suspended from the practice of law.

lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 3, *Lawyer Disciplinary Board v. Wheaton*, 216 W.Va. 673, 610 S.E.2d 8 (2004). Moreover, this Court held in syllabus point 5 of *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986), that "[p]rior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust." Syl. pt. 2, *Committee on Legal Ethics v. Smith*, 184 W.Va. 6, 399 S.E.2d 36 (1990).

In *McCorkle 1*, this Court upheld a finding that the respondent testified falsely concerning the telephone calls he made to certain accident victims, and such conduct constituted a "serious transgression" of the rules of ethics. *McCorkle 1* was decided in 1994, and subsequently, in this case, the respondent submitted the altered checks and gave false deposition testimony in relation thereto in both the ethics proceeding and in the defamation action. Under those circumstances, and in view of *McCorkle 2* which involved an adjudication that the respondent failed to maintain financial records, this Court is of the opinion that the Hearing Panel Subcommittee properly considered aggravating factors in imposing the recommended sanctions.

## V.

### Conclusion

■ Upon all of the above, this Court concludes that the charges against respondent McCorkle set forth in Count 1 and Count 2 were proven by clear and convincing evidence as required by Rule 3.7. of the Rules of Lawyer Disciplinary Procedure. Accordingly, the objection of the respondent is overruled, and this Court adopts the recommended decision of the Hearing Panel Subcommittee as follows: (1) that respondent McCorkle's license to practice law in West Virginia be annulled, (2) that, as a prerequi-

site to reinstatement, he *shall* be certified by an independent health care professional in the appropriate field that he is in such condition that his ability to practice law will result in the protection of the public and (3) that he reimburse the Lawyer Disciplinary Board for the costs of these proceedings.[6]

License to Practice Law in West Virginia Annulled

---

**6.** All other issues raised by the respondent are without merit. In particular, this Court holds: (1) that the Hearing Panel Subcommittee committed no error in observing the respondent's demeanor during the hearing, (2) that the Sub- committee fully considered the testimony of the respondent's witness, Dr. John P. MacCallum and (3) that the charges and disposition in this proceeding are not time-barred.