IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

No. 14-1119

**FILED**

**October 14, 2016**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner,

v.

KEVIN E. MCCLOSKEY,
Respondent.

Lawyer Disciplinary Proceeding
No. 14-03-152

PUBLIC REPRIMAND, PROHIBITION ON
APPLICATION FOR ADMISSION,
AND OTHER SANCTIONS

Submitted:  September 21, 2016
Filed: October 14, 2016

Joanne M. Vella Kirby, Esq.
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Attorney for Petitioner

Kevin E. McCloskey
Morgantown, West Virginia
Pro Se Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs and reserves the right to file a concurring opinion.

**SYLLABUS BY THE COURT**

1. "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

3. "'This Court retains the inherent power to regulate the practice of law in this State, and under Rule 1 of the Rules of Lawyer Disciplinary Procedure, as amended by this Court on December 6, 1994, a lawyer is subject to discipline in this State for violating the West Virginia Rules of Professional Conduct if he or she engages in the practice of law in this State, whether or not he or she is formally admitted to practice by this Court.' Syl. Pt. 6,

*Lawyer Disciplinary Bd. v. Allen*, 198 W.Va. 18, 479 S.E.2d 317 (1996)." Syl. Pt. 4, *State ex rel. York v. W.Va. Office of Disciplinary Counsel*, 231 W.Va. 183, 744 S.E.2d 293 (2013).

4. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

5. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

**LOUGHRY, Justice:**

A Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board has determined that the respondent, Kevin E. McCloskey, a lawyer who is not admitted to the West Virginia Bar, violated the West Virginia Rules of Professional Conduct by engaging in the unauthorized practice of law in this state, committing acts of professional misconduct in this state, and failing to respond to the Office of Disciplinary Counsel's ("ODC") requests for information in response to an ethics complaint.

After a thorough review of the record developed before the HPS, and upon a consideration of the ODC's brief and oral argument,[1] we adopt the HPS's findings of fact and conclusions of law. However, exercising our exclusive authority to determine the appropriate sanction in lawyer disciplinary matters, this Court imposes a different sanction than that recommended by the HPS. Our review compels this Court to impose a public reprimand; a five year prohibition on the respondent's opportunity to apply for admission to practice law in West Virginia, including *pro hac vice* admission; a five year prohibition on the respondent's appearance in any court in West Virginia; a requirement that if the respondent should ever seek admission to the West Virginia State Bar, he first obtain twelve

---

[1]The respondent disputed the allegations before the HPS, but he did not file a brief to this Court or appear for oral argument.

1

hours of continuing legal education in the areas of law office management and/or legal ethics; and a requirement that he pay the costs of these disciplinary proceedings.

## I. Factual and Procedural Background

The respondent was a licensed member of the Pennsylvania Bar. In 2013 and early 2014, he worked as an attorney employed by the Law Offices of Karen L. Hughes, a GEICO captive insurance defense firm in Pittsburgh, Pennsylvania. The respondent is not, and never has been, a licensed member of the West Virginia State Bar, and he has never been admitted *pro hac vice* in any West Virginia court.

Pursuant to the filing of formal lawyer disciplinary statement of charges, the HPS held an evidentiary hearing on November 17, 2015. The respondent appeared by telephone to dispute the charges. After considering the evidence and argument, the HPS made several findings of fact and conclusions of law set forth in a report filed with this Court on March 21, 2016.

The HPS found that although the respondent was not licensed to practice law in West Virginia, on or about December 10, 2013, he entered his appearance on behalf of the defendant in a case pending in the Circuit Court of Ohio County styled *Sneddon v. Jasper*, civil action 13-C-385. The record reflects that he signed and filed a "Praecipe for Entry of

Appearance" and the accompanying certificate of service in this case. Moreover, in the praecipe, he falsely represented that he was a West Virginia-licensed attorney: The document identified him as "Kevin McCloskey, Esquire, WVATTY I.D. No. 11529." West Virginia State Bar number 11529 is assigned to a lawyer who was not in the respondent's firm and was not involved in the *Sneddon* case. In addition, attorney Brent Wear, who was counsel for the plaintiff in *Sneddon,* testified that he received an answer to the complaint that was signed by the respondent as defense counsel.

The HPS further found that on or about February 10, 2014, the respondent entered his appearance on behalf of the defendants in *Fisher v. Matics*, civil action 14-C-19, a case pending in the Circuit Court of Hancock County. The record includes a "Praecipe for Entry of Appearance," a certificate of service, and a cover letter that the respondent signed and filed in *Fisher*. In the praecipe, the respondent identified himself as "Kevin McCloskey, Esquire, PA I.D. NO. 95072," which is his Pennsylvania Bar number.

For his conduct in these two cases, the HPS concluded that the respondent violated the following West Virginia Rules of Professional Conduct: two violations of Rule 5.5(a) for engaging in the unauthorized practice of law; a violation of Rule 8.4(b) for committing a criminal act, inasmuch as practicing law without a license is a misdemeanor pursuant to West Virginia Code § 30-2-4 (1923); a violation of Rule 8.4(c) for conduct

3

involving dishonesty, fraud, deceit or misrepresentation; and a violation of Rule 8.4(d) for conduct prejudicial to the administration of justice.[2]

Although the *Sneddon* and *Fisher* matters were the basis for the rule violations alleged in the statement of charges, upon conducting the evidentiary hearing, the HPS learned that the respondent's unethical conduct was not limited to those two cases. The HPS found that the respondent also signed and filed pleadings in the Circuit Court of Brooke County for *Corbin v. Tustin*, No. 13-C-165; in the Circuit Court of Marion County for *Smith v. Huffman*, No. 13-C-361; and in the Circuit Court of Ohio County for *Stephenson v. Pasqualia*, No. 13-C-411. The record reflects that in each of these three West Virginia cases, the respondent filed documents as counsel for the defendant(s). Moreover, a civil case information sheet filed by the respondent in *Stephenson* contains the name "Kevin McCloskey, Esquire, WVSB," thus falsely representing that he was a member of the West Virginia State Bar.

The evidentiary hearing also revealed that the respondent has received prior professional discipline for engaging in the unauthorized practice of law. The Disciplinary Board of the Supreme Court of Pennsylvania admonished the respondent in 2007 because he had held himself out as an attorney in the spring and summer of 2005, a time when he was not licensed to practice law in Pennsylvania. That same board issued a public reprimand to

---

[2]The statute and rules are quoted in section III of this opinion.

the respondent in October 2013 because, in January 2012, the respondent represented a client even though he was administratively suspended from the practice of law for his failure to comply with Pennsylvania rules regarding obtaining continuing legal education. Based upon all of the West Virginia cases and the two Pennsylvania sanctions, the HPS concluded that the respondent has engaged in a pattern and practice of unethical conduct.

The HPS's report to this Court also described the ODC's investigation of this matter that led to the filing of the formal charges, including the respondent's repeated failure to respond to the ODC's requests for information. Upon learning in March 2014 that the respondent had entered his appearance in a West Virginia case, the ODC opened a complaint and initiated an investigation into whether the respondent was engaged in the unauthorized practice of law in this state. On March 12, 2014, the ODC sent the respondent a letter at his Pittsburgh firm's address instructing him to file a verified response within twenty days pursuant to Rule 2.5 of the Rules of Lawyer Disciplinary Procedure. When the respondent failed to respond, the ODC sent a second letter on April 10, 2014, warning that if he did not respond the ODC would subpoena him to appear and give a statement or the allegations would be deemed admitted. These letters were returned to the ODC unopened on or about

5

April 13, 2014, with a notation on the envelopes that the respondent was no longer employed at the law firm.[3]

Mary E. "Besty" Casto, a legal assistant employed by the ODC, testified that the respondent left a telephone voice mail message with the ODC on April 14, 2014, reporting that he was no longer employed at the Pittsburgh law firm and providing his new telephone number. Ms. Casto testified that on April 17, 2014, the respondent again called the ODC, providing an address in McMurray, Pennsylvania, where he could receive correspondence. That same day, the ODC re-sent its previous letters to the Respondent at the McMurray address with directions that he file a verified response to the complaint within twenty days.

The respondent failed to respond to the complaint or make any further contact with the ODC, prompting the ODC to obtain a subpoena *duces tecum* for his appearance and sworn testimony at the ODC's office on September 30, 2014. This subpoena was personally served upon the respondent on September 8. The respondent provided the process server with a new address in Morgantown, West Virginia.

---

[3]The respondent testified that his employment at the Law Offices of Karen L. Hughes was terminated in February 2014.

On September 29, at 2:35 p.m., the ODC received a letter that the respondent sent via facsimile acknowledging receipt of the subpoena but stating he would be unable to appear. This letter did not provide any response to the complaint, and the respondent did not file a motion to quash the subpoena. The HPS found that at approximately 4:50 p.m. on September 29, counsel for the ODC, Joanne Vella Kirby, telephoned the number the respondent had previously provided and left a voice mail message informing him that he was not released from the subpoena. The respondent failed to appear on September 30. On October 1, Ms. Kirby sent the respondent a letter via regular mail and electronic mail confirming the contents of her earlier voice mail message and noting the respondent's failure to comply with the subpoena. On October 6, the ODC received a letter from the respondent in which he denied he had received a telephone call or voice mail message from Ms. Kirby. This letter did not provide any response to the allegation that he was practicing law in West Virginia without a license.

The respondent never responded to the ODC, and the matter proceeded to the filing of a formal statement of charges and an HPS evidentiary hearing. Although the respondent provided an answer to the statement of charges and appeared via telephone at the HPS hearing, the HPS concluded that the respondent violated Rule 8.1(b) for knowingly failing to comply with the ODC's requests for information during the investigation.[4]

---

[4]This rule is quoted in section III of this opinion.

In its report, the HPS recommends that this Court impose the following sanctions: prohibit the respondent from admission to the West Virginia State Bar, including admission *pro hac vice*, for no less than three years; prohibit the respondent from making any appearance in any court in West Virginia for no less than three years; should the respondent ever seek admission to the West Virginia State Bar in the future, require that he first obtain twelve hours of continuing legal education with a focus on law office management and/or legal ethics; and order the respondent to pay the costs of these disciplinary proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure. The ODC has filed a notice with this Court indicating its agreement with the HPS's findings of fact and conclusions of law, but urging this Court to impose a harsher sanction. The ODC suggests that this Court should prohibit the respondent's possible future admission in this state for a period of five years. The respondent did not file any objections to the HPS report and has not participated in the proceedings before this Court.

## II. Standards of Review

The following standards apply to our consideration of lawyer disciplinary matters:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own

8

independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

While we respectfully consider the HPS's recommendations on the appropriate sanction to impose, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). Finally, we are mindful that "Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). With these considerations in mind, we address the issues raised in this matter.

## III. Discussion

### A. Violations of the West Virginia Rules of Professional Conduct

Although the respondent is not licensed to practice law in West Virginia, he is nonetheless subject to professional discipline in this State for violations of the West Virginia Rules of Professional Conduct.

"This Court retains the inherent power to regulate the practice of law in this State, and under Rule 1 of the Rules of Lawyer Disciplinary Procedure, as amended by this Court on

9

December 6, 1994, a lawyer is subject to discipline in this State for violating the West Virginia Rules of Professional Conduct if he or she engages in the practice of law in this State, whether or not he or she is formally admitted to practice by this Court." Syl. Pt. 6, *Lawyer Disciplinary Bd. v. Allen*, 198 W.Va. 18, 479 S.E.2d 317 (1996).

Syl. Pt. 4, *State ex rel. York v. W.Va. Office of Disciplinary Counsel*, 231 W.Va. 183, 744 S.E.2d 293 (2013). The type of law practice in which an unlicensed lawyer is engaged is irrelevant to the analysis:

> Pursuant to Rule 1 of the West Virginia Rules of Lawyer Disciplinary Procedure, the West Virginia Rules of Professional Conduct govern the conduct of an attorney who practices law in this state or provides or offers to provide legal services in this state, even where such attorney's practice consists entirely of federal matters. In such circumstances, the West Virginia Office of Disciplinary Counsel and the West Virginia Lawyer Disciplinary Board have jurisdiction to investigate the alleged misconduct and recommend disciplinary action against the attorney regardless of whether the attorney is a member of the West Virginia State Bar.

*Id.* at 185-86, 744 S.E.2d at 295-96, syl. pt. 5. Rule 1 of the Rules of Lawyer Disciplinary Procedure, as amended in 1999, provides, in pertinent part, that this Court established the Lawyer Disciplinary Board to conduct disciplinary proceedings against "those admitted to the practice of law in West Virginia or any individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia[.]" The respondent

was licensed to practice law in the Commonwealth of Pennsylvania at the time of the offenses described herein.[5]

Moreover, "[t]he exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals." Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982). "This includes the authority to define, sanction, enjoin, and otherwise address the unauthorized practice of law. *West Virginia State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959)." *McMahon v. Advanced Title Services Co. of West Virginia*, 216 W.Va. 413, 418, 607 S.E.2d 519, 524 (2004). "It is essential to the administration of justice and the proper protection of society that only qualified persons duly licensed be permitted to engage in the practice of law." Michie's West Virginia Code Annotated State Court Rules, Definition of the Practice of Law, in part, at 965 (2016).

Turning to the specific allegations in this case, for his conduct in the *Sneddon* and *Fisher* cases the HPS concluded that the respondent violated Rules 5.5(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.[6] Rule 5.5 provides, in pertinent part:

---

[5]By the time of the hearing on the formal charges, the respondent was administratively suspended from the Pennsylvania Bar.

[6]Amendments to the Rules of Professional Conduct took effect in 2015, but the respondent's conduct was governed by the prior version of the rules as quoted herein.

"**Unauthorized practice of law.** A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction[.]" W.Va. R. Prof. Conduct, Rule 5.5(a) (1989). Rule 8.4 states,

> **Misconduct.** It is professional misconduct for a lawyer to: . . .
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
> (d) engage in conduct that is prejudicial to the administration of justice.

W.Va. R. Prof. Conduct, Rule 8.4 (1995), in part.

It is beyond cavil that the filing of legal documents with a circuit court on behalf of another person or entity, while identifying one's self as a lawyer representing that other person or entity, constitutes the practice of law. This Court's long-standing "Definition of the Practice of Law" expressly states that the practice of law includes "undertak[ing], with or without compensation and whether or not in connection with another activity, to prepare for another legal instruments of any character" or "represent[ing] the interest of another before any judicial tribunal or officer[.]" Michie's West Virginia Code Annotated State Court Rules, Definition of the Practice of Law, in part, at 965; *accord Shenandoah Sales & Service, Inc. v. Assessor of Jefferson Co.*, 228 W.Va. 762, 724 S.E.2d 733 (2012) (recognizing that non-lawyer corporate official engaged in unauthorized practice of law when filing documents in court). Indeed, during the evidentiary hearing the respondent did not

12

dispute that the actions attributed to him would constitute the unauthorized practice of law. Instead, he denied ever signing or filing the aforementioned West Virginia documents.

The respondent suggested that someone in his law firm must have forged his name and filed the documents without his authorization, knowledge, or participation. A review of the record shows that the HPS correctly rejected this self-serving and speculative claim. Notably, the respondent failed to assert this defense during the ODC's investigation, waiting instead to raise it during the HPS hearing nineteen months after he was aware of the ODC's investigation and thirteen months after the filing of the statement of charges. The respondent presented no witnesses to support this assertion, and he never reported anyone in the firm to disciplinary authorities in Pennsylvania or West Virginia.

To support his claim of forgery, the respondent testified that his practice is to always use his full name, "Kevin Edward McCloskey," on professional documents. He argued that if he had signed and filed the aforementioned documents, he would have used his full name. The name on some of the documents filed in West Virginia is set forth as "Kevin McCloskey," omitting his middle name.[7] The respondent's credibility on this assertion is severely undermined, however, by the fact that in these very disciplinary

---

[7]The record reflects that some of the documents filed in West Virginia used "Kevin Edward McCloskey," while others used "Kevin McCloskey."

proceedings, he submitted documents as "Kevin McCloskey" in both his typed signature line and his letterhead.[8] In addition, the ODC presented the expert testimony of a forensic document examiner, Kenneth Wayne Blake, who reviewed the disputed documents and compared the signatures thereon with known exemplars of the respondent's signature. Mr. Blake opined with certainty that all of the signatures were made by the same person–the respondent. Having reviewed the record, we agree that there is clear and convincing evidence proving respondent's violation of the unauthorized practice rule, Rule 5.5(a).

We also agree with the HPS's conclusions that the respondent violated Rules 8.4(b), (c), and (d). Rule 8.4(b) prohibits a lawyer from committing a criminal act that reflects adversely on his or her honesty or fitness as a lawyer, and West Virginia Code § 30-2-4 (1923) criminalizes the unlicensed practice of law in this State.[9] In addition, the

[8]The respondent used the name "Kevin McCloskey," without a middle name or initial, on two letters to the ODC that were admitted into the record and are described in section I of this opinion, supra, and on a cover letter filed with this Court accompanying his answer to the statement of charges. The respondent acknowledged during the evidentiary hearing that he sent these particular letters.

[9]Although West Virginia Code § 30-2-4 has since been amended, the 1923 version in effect at the time of the respondent's unauthorized practice of law provided, in part:

> It shall be unlawful for any natural person to practice or appear as an attorney-at-law for another in a court of record in this State, . . . or to hold himself out to the public as being entitled to practice law, or in any other manner to assume, use, or advertise the title of lawyer, or attorney and counselor-at-law, or counselor, or attorney and counselor, or equivalent terms in any language, in such manner as to convey the impression that he is

14

respondent's repeated instances of falsely holding himself out as a lawyer authorized to practice law in West Virginia, and most particularly his use of a false Bar number on the *Sneddon* pleading, were acts involving dishonesty, fraud, deceit and/or misrepresentation contrary to Rule 8.4(c). Furthermore, the respondent's conduct was contrary to the administration of justice in violation of Rule 8.4(d). He allowed circuit courts, opposing counsel, and parties to believe that he was authorized to practice law in West Virginia. When his true status was discovered, new defense counsel had to be retained and substituted into the cases. Attorney Mark Kepple, the attorney who assumed the representation of the defendants, testified that that respondent's actions caused delay and placed clients at risk for default judgment because pleadings were not filed by properly-licensed counsel.

Finally, the HPS concluded that the respondent violated Rule 8.1(b):

**Bar admission and disciplinary matters.** An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: . . . (b) . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

W.Va. R. Prof. Conduct, Rule 8.1(b) (1989). This Court explained that

a legal practitioner of law . . . without first having been duly and regularly licensed and admitted to practice law in a court of record of this State . . . . Any person violating the provisions of this section shall be guilty of a misdemeanor[.]

15

> [a]n attorney violates West Virginia Rule of Professional Conduct 8.1(b) by failing to respond to requests of the West Virginia State Bar concerning allegations in a disciplinary complaint. Such a violation is not contingent upon the issuance of a subpoena for the attorney, but can result from the mere failure to respond to a request for information by the Bar in connection with an investigation of an ethics complaint.

Syl. Pt. 1, *Committee on Legal Ethics v. Martin*, 187 W.Va. 340, 419 S.E.2d 4 (1992).

The record shows that the respondent violated Rule 8.1(b). Although he may not have received the initial letters sent to him, by April 2014 the respondent knew that the ODC was investigating him inasmuch as he telephoned the ODC office to provide his new contact information. As a non-West Virginia licensed attorney, there would have been no reason for him to contact the West Virginia ODC but for the existence of a pending investigation. Moreover, on April 17, 2014, the ODC re-sent its letters to the respondent at the new address he provided. Pursuant to Rule 2.5 of the Rules of Lawyer Disciplinary Procedure, the respondent was permitted twenty days in which to file a verified response to the ODC. Despite the passage of several months, the respondent failed to respond to the ODC's requests for information. In addition, on September 30, 2014, he ignored the ODC's subpoena *duces tecum*, neither appearing in person as commanded nor moving to quash the subpoena. Accordingly, we conclude that all of the HPS's findings of fact and conclusions of law in this disciplinary matter are supported by the record, and we accordingly adopt the same.

16

## B. Sanction

Although we give respectful consideration to the HPS's recommendation on sanctions, this Court makes the ultimate decision on all attorney discipline. *McCorkle*, 192 W.Va. at 287, 452 S.E.2d at 378, syl. pt. 3; *see also Blair*, 174 W.Va. at 494-95, 327 S.E.2d at 672, syl. pt. 3. "The principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice." Syl. Pt. 3, *Daily Gazette v. Committee on Legal Ethics*, 174 W.Va. 359, 326 S.E.2d 705 (1984). A sanction should also be geared toward the goal of effective deterrence. Syl. Pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). This Court takes into account the following factors when deciding upon an appropriate sanction:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

17

It is clear that the respondent violated duties owed to his clients, the legal system, and the profession. Lawyers are officers of the court who must act honestly and abide by the rules. The respondent represented clients in courts in which he was not licensed to practice law, falsely portrayed himself as being authorized to do so, tried to deceive the court and others by providing a false West Virginia State Bar number, and failed to respond to the ODC's requests for information in response to the ethics complaint. Inasmuch as the ODC proved by clear and convincing evidence that it was the respondent's own signature on the documents filed with the circuit courts in *Sneddon* and *Fisher*, we must conclude that the respondent acted intentionally and knowingly.

Moreover, the respondent put his clients at risk of suffering adverse rulings and delays. Upon learning that the responsive pleading in *Stephenson* was signed and filed by an unlicensed lawyer, the circuit court struck the answer and granted a liability judgment against GEICO.[10] In addition, the *Sneddon* case was temporarily stayed upon the circuit court's discovery that the respondent was unlicensed.

A mitigating factor in a lawyer disciplinary proceeding is any consideration or factor that may justify a reduction in the discipline to be imposed. Syl. Pt. 2, *Lawyer*

---

[10]Subsequent defense counsel testified that *Stephenson* was ultimately settled.

*Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). Examples of mitigating

factors are set forth in the *Scott* opinion:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.* at 210, 579 S.E.2d at 551, syl. pt. 3. The HPS found no mitigating factors present in this

case. Our review of the record has similarly revealed nothing in mitigation, and the

respondent has failed to file a brief to illuminate this issue.


Several of the factors listed in *Scott* point us toward the need to impose a harsh

sanction. "Aggravating factors in a lawyer disciplinary proceeding are any considerations

or factors that may justify an increase in the degree of discipline to be imposed." *Id.* at 210,

579 S.E.2d at 551, syl. pt. 4. The respondent has a prior disciplinary record in Pennsylvania

for committing the same conduct–the unauthorized practice of law–on two separate

occasions. *See* Syl. Pt. 5, *Comm. on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d

107 (1986) ("Prior discipline is an aggravating factor in a pending disciplinary proceeding

19

because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust."). Furthermore, by failing to respond to the ODC's requests for information in the investigation, the respondent did not make a full and free disclosure nor did he exhibit a cooperative attitude. The respondent has exhibited no remorse in this matter. Rather than exhibiting remorse, he urged the HPS to adopt his unsupported claim that someone falsified his Bar number and forged his signature to multiple court documents.

The ODC proved that the respondent engaged in a pattern and practice of committing the unauthorized practice of law. In addition to the *Sneddon* and *Fisher* cases, and the two separate unauthorized practice of law matters for which the respondent was disciplined in Pennsylvania, the ODC presented evidence of three additional cases for which the respondent filed pleadings on behalf of clients in West Virginia courts. A pattern and practice of misconduct is an aggravating factor for purposes of determining what sanction to impose. *See, e.g., Scott*, 213 W.Va. at 217, 579 S.E.2d at 558; *Lawyer Disciplinary Bd. v. Sims*, 212 W.Va. 463, 469, 574 S.E.2d 795, 801 (2002); *accord* ABA Standards for Imposing Lawyer Sanctions, Standard 9.22(c) (2012).

Cases from this and other jurisdictions indicate that when a lawyer commits the unauthorized practice of law in a state in which he or she is not licensed, an appropriate sanction includes a prohibition on seeking admission to the bar of that state for a period of

time.   In *Lawyer Disciplinary Board v. York*, No. 12-1149 (W.Va. Oct. 15, 2014) (unreported), a lawyer not licensed in West Virginia handled patent and trademark cases on behalf of several West Virginia clients while he was associated with a West Virginia firm. There were several factors in mitigation of sanction in *York*, including that this Court's jurisdiction over the lawyer's practice had been a matter of first impression for our Court,[11] the lawyer had no prior disciplinary record, and the lawyer also received discipline from another licensing authority for this particular conduct.  We adopted the recommendation of the HPS to impose a sanction that included, *inter alia*, a one year prohibition on the lawyer's opportunity to seek admission to the West Virginia State Bar, including admission *pro hac vice*, or appear in any West Virginia court.

In *In re Cortigene*, 144 So.3d 915 (La. 2014), a lawyer who was licensed in other states, but was not admitted to the Louisiana Bar, represented a client in a case being litigated in the United States District Court for the Eastern District of Louisiana.  At the conclusion of lawyer disciplinary proceedings, the Supreme Court of Louisiana enjoined the lawyer from seeking admission to the Louisiana bar, including admission *pro hace vice*, for a period of three years.  In *In re Van Son*, 742 S.E.2d 660 (S.C. 2013), the Supreme Court of South Carolina prohibited an unlicensed lawyer from admission for five years because he engaged in lawyer advertising and the solicitation of clients in that state.  In *Iowa Supreme*

---

[11]*See York*, 231 W.Va. 183, 744 S.E.2d 293.

*Court Attorney Disciplinary Board v. Carpenter,* 781 N.W.2d 263 (Iowa 2010), a lawyer who was on administrative suspension in another state and who was not licensed in Iowa nonetheless maintained an office in Iowa while representing clients in federal immigration matters. For this and other violations, the Supreme Court of Iowa prohibited him from seeking admission to the Iowa Bar for at least two years. *Id.* Additionally, the Court of Appeals of Maryland "disbarred" an unlicensed attorney who was untruthful and who engaged in the unauthorized practice of law in that state. *Attorney Grievance Comm'n of Maryland v. Barneys*, 805 A.2d 1040 (Md. 2002).

Moreover, we recognize that Rule of Professional Conduct 8.4 encompasses some of the most egregious conduct that a lawyer can commit: criminal acts; acts of dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice. Although the discipline imposed in any disciplinary case necessarily turns on the facts of the particular case, violations of Rule 8.4 have often resulted in the disbarment of licensed attorneys. *See, e.g.*, *Lawyer Disciplinary Bd. v. Askin*, 203 W.Va. 320, 507 S.E.2d 683 (1998) (annulment for criminal contempt conviction); *Lawyer Disciplinary Bd. v. Blevins*, 222 W.Va. 653, 671 S.E.2d 658 (2008) (misconduct including encouraging convicted felon to intimidate former clients warranted disbarment); *Lawyer Disciplinary Bd. v. McCorkle*, 219 W.Va. 245, 633 S.E.2d 1 (2006) (disbarment for making misrepresentations and diverting client monies). The American Bar Association recommends

22

that "[d]isbarment is generally appropriate when . . . a lawyer engages in . . . intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA Standards for Imposing Lawyer Sanctions, § 5.11(b). In addition, "[d]isbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." *Id.* at § 7.1. As recounted above, the respondent demonstrated a pattern of misconduct including misrepresenting himself as a West Virginia-licensed attorney and providing false information. These actions benefitted him in that he and his law firm were retained for the cases. Unfortunately, his conduct placed his clients at serious risk of harm, as evidenced by the default judgement entered in one case.

Finally, the failure to respond to ODC's requests for information is also a sanctionable offense. In *Martin*, where the failure to respond to a disciplinary complaint was the only conduct for which a sanction was imposed, this Court concluded that a public reprimand was appropriate. *Martin*, 187 W.Va. 340, 419 S.E.2d 4. Because the legal profession is self-regulating, for the protection of the public it is paramount that lawyers comply with their obligations under the Rules of Lawyer Disciplinary Procedure.

23

After carefully considering all of the respondent's conduct, rule violations, and aggravating factors in this matter, we conclude that the sanction recommended by the HPS[12] is not sufficient. The centerpiece of the recommended sanction is a three year prohibition on the respondent's opportunity to seek admission to the West Virginia State Bar, but there is no indication in the record that the respondent intends to seek a West Virginia law license.[13] Moreover, given the extent of the respondent's deception and misconduct, and the extensive aggravating factors, a three-year prohibition period would not adequately protect the public. As set forth above, licensed lawyers who commit misconduct in violation of Rule 8.4 are often subject to disbarment.[14] Disbarred lawyers must wait five years before seeking reinstatement of their law license. *See* W.Va. R. Lawyer Disciplinary Pro. 3.33(b) (permitting disbarred lawyer to petition for reinstatement after five years).

Accordingly, in exercising our exclusive authority to determine the appropriate sanction in a lawyer disciplinary matter, we conclude that a public reprimand should be

---

[12]The HPS's recommended sanction is set forth in detail at the end of section I of this opinion.

[13]The respondent testified that he voluntarily resigned his Pennsylvania law license in July 2015. However, the HPS noted that the website for Disciplinary Board of the Supreme Court of Pennsylvania lists the respondent's status as "administrative suspension."

[14]This Court has long held that "'[d]isbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession.' Syl. Pt. 2, *In re Daniel*, 153 W.Va. 839, 173 S.E.2d 153 (1970)." Syl. Pt. 10, *Lawyer Disciplinary Bd. v. Scotchel*, 234 W.Va. 627, 768 S.E.2d 730 (2014).

24

added to the sanction recommended by the HPS. In addition, the period of restriction on the respondent's opportunity to seek admission to the West Virginia State Bar, including admission *pro hac vice*, and to appear in any court in West Virginia, should be five years. We agree with the HPS's recommendations regarding continuing legal education and the payment of costs.

## IV. Conclusion

For the foregoing reasons, this Court imposes the following discipline on the respondent:

(1) a public reprimand;

(2) a five year prohibition on the respondent's opportunity to apply for admission to practice law in West Virginia, including *pro hac vice* admission;

(3) a five year prohibition on the respondent's appearance in any court in West Virginia;

(4) a requirement that if the respondent should ever seek admission to the West Virginia State Bar, he first obtain twelve hours of continuing legal education in the areas of law office management and/or legal ethics; and

(5) a requirement that the respondent pay the costs of these disciplinary proceedings.[15]

> Public reprimand, prohibition on application for admission, and other sanctions imposed.

---

[15]The Clerk of Court is directed to forward a copy of this opinion to the Disciplinary Board of the Supreme Court of Pennsylvania.

25