IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 27, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**TASHA R.,**
**Respondent Below, Petitioner**

**v.)  No. 25-ICA-313**    (Fam. Ct. Lincoln Cnty. Case No. FC-22-2015-D-135)

**BRIAN R.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Tasha R.[1] ("Mother") appeals the Family Court of Lincoln County's July 15, 2025, final order that denied her petition to modify custodial allocation. Respondent Brian R. ("Father") filed a response in support of the family court's order.[2] Mother did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were divorced in early 2016 and share three children who were born in 2008, 2010, and 2013. Sometime thereafter, Mother filed a motion to modify custodial allocation, and Father filed a petition for a domestic violence protective order against Mother's boyfriend on behalf of the parties' oldest child. On April 2, 2024, the family court held a hearing on Mother's motion to modify and Father's domestic violence petition. However, prior to hearing evidence, the parties represented to the court that they had reached an agreement relating to custody.[3] On April 23, 2024, the family court entered a

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is self-represented. Father is represented by Steven M. Thorne, Esq.

[3] The order regarding Father's domestic violence petition was entered separately. However, pertinent to this appeal, on April 2, 2024, the family court granted Father's

final order from the April 2, 2024, hearing that detailed the parties' custody agreement. This agreement modified the parties' previous August 16, 2023, parenting plan.[4]

Relevant to this appeal, the family court's April 23, 2024, order found that the parties agreed to the following: 1) that Father would retain primary custody of all three children; 2) that the two oldest children could visit Mother at their discretion due to their age and maturity; 3) that Mother would receive an additional weekend of parenting time with the youngest child if she participated in family counseling for all three children; 4) that Father would receive parenting time on every fourth weekend and Mother would receive parenting time for three consecutive weekends with the youngest child, which schedule was to continue during school; 5) that any and all contact between the children and Mother's boyfriend, who is also the children's great uncle, was prohibited; and 6) that the parties would continue a week-on/week-off parenting schedule during the summer months regarding the youngest child. The family court found that the parties' parenting agreement was fair, equitable, in the best interest of the children, and that the parties entered into the agreement freely and voluntarily without coercion or duress.

On March 27, 2025, Mother filed a motion for reconsideration of the April 23, 2024, order, alleging that the order mistakenly failed to specify when contact between the youngest child and Mother's boyfriend would be restored. Mother maintained that the child was permitted contact with her boyfriend upon the expiration of the April 2, 2024, domestic violence protective order and further asserted that newly discovered evidence, that her boyfriend was not criminally charged, warranted a reconsideration of the April 23, 2024, order. In response, Father filed an answer and counter-petition, requesting that Mother be held in contempt of the April 23, 2024, order for allowing the youngest child to have contact with Mother's boyfriend. Father's counter-petition also sought to modify the April 23, 2024, order to reflect that parenting time with Mother be at the youngest child's discretion. Mother subsequently filed her own counter-petition for modification, seeking to allow the youngest child to decide with whom he wished to reside.

On June 24, 2025, the family court held a hearing on the parties' motions and counter-petitions. Notably, Mother moved the court to treat her motion for reconsideration as a motion for modification of the April 23, 2024, order, and the family court granted her request. By order entered July 15, 2025, the family court modified the April 23, 2024, order by decreasing Mother's parenting time with the youngest child. In support of this ruling, the court found that a domestic violence protective order was entered on April 2, 2024,

---

domestic violence petition, which was against Mother's boyfriend for sexual assault of the parties' oldest child.

[4] The record is unclear regarding the specifics of the prior parenting plan, as it was not provided to this Court on appeal.

against Mother's boyfriend, who is also Father's uncle, for sexually assaulting the parties' oldest child "as defined in [West Virginia] Code § 61-8B-1 and § 61-8D-1 pursuant to [the child's] disclosure in the [Child Advocacy Center] interview as testified to by the Child Protective Services worker." The family court found that on the same day that the domestic violence protective order was entered, the parties entered into a custody agreement that the minor children would have no contact of any kind with Mother's boyfriend and that their agreement was subsequently incorporated into the court's April 23, 2024, order. The family court found that Mother admitted to allowing the youngest child have contact with her boyfriend because she believed it was allowed after the domestic violence protective order expired. The court explicitly found that, despite its finding that Mother's boyfriend sexually assaulted the parties' oldest child, Mother testified that it was in the youngest child's best interest to have contact with her boyfriend.

Thereafter, based upon these findings, the family court found that the presumption of equal custody had been rebutted, pursuant to West Virginia Code § 48-9-209. Further, the court found it unconscionable that Mother believed it was in the youngest child's best interest to have contact with her boyfriend after the court's prior findings of sexual assault. The court explained that "to protect [the child], the court finds it must impose limits on [Mother's] parenting time" and concluded that Mother's parenting time be supervised. Specifically, the court granted Mother one hour of supervised parenting time weekly with the parties' youngest child. Once again, the court prohibited any contact "whatsoever" between the minor children and Mother's boyfriend. The court noted that Mother could file another petition for modification once she could provide sufficient evidence that she would protect the children from her boyfriend. It is from this July 15, 2025, order that Mother now appeals.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother argues six assignments of error. Because several are similar, they will be consolidated for clarity and efficiency as discussed below. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

3

For her first and third assignments of error, Mother argues that the family court erred by adopting the parties' April 2, 2024, parenting agreement. Specifically, Mother asserts that the family court forced her to agree to the no-contact provision between the youngest child and Mother's boyfriend, and that the report from Child Protective Services found no evidence to support the sexual assault allegations. Pursuant to Rule 13 of the West Virginia Rules of Appellate Procedure, an appeal to this Court from a family court's final order must be filed within thirty days of the final order's entry. Mother's first and third assignments of error pertain to the family court's April 23, 2024, order, which was not timely appealed, and thus, will not be considered.[5]

For her second assignment of error, Mother asserts that the family court erred by violating her boyfriend's due process rights to contact her children since he was not criminally charged with sexual assault. In support of her argument, she contends that the only evidence against her boyfriend was hearsay, yet he was deprived "of life and liberty."[6] We find no merit in this argument.

Family court proceedings operate under strict statutory standing requirements that fundamentally limit who may participate in custody and visitation matters. West Virginia Code § 48-9-103(a) (2001) establishes the following three exclusive categories of persons with automatic standing:

---

[5] To the extent that Mother's arguments pertain to the family court's rulings in the domestic violence action, we decline to address those arguments because this Court lacks jurisdiction over "final orders issued by a family court in any domestic violence proceeding[.]" W. Va. Code § 51-11-4(b)(2) (2024). Although the family court essentially consolidated the domestic violence issue with the custody matter, this Court previously held that consolidation by a lower court of a matter that this Court does not have jurisdiction over with a matter over which this Court does have jurisdiction does not bestow appellate jurisdiction over both matters. *See SWN Prod. Co.*, *LLC v. City of Weirton Bd. of Zoning Appeals*, No. 23-ICA-405, 2024 WL 1730044, at *3 (W. Va. Ct. App. Apr. 22, 2024) (memorandum decision); *see also Shawn D. v. Cynthia H.*, No. 24-ICA-145, 2024 WL 5003364, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision).

[6] As a precaution, we remind litigants that the Supreme Court of Appeals of West Virginia ("SCAWV") has established clear prohibitions against the unauthorized practice of law which prevents litigants from representing non-related third parties. *See Law. Disciplinary Bd. v. McCloskey*, 238 W. Va. 165, 793 S.E.2d 23 (2016) (holding that the definition of practicing law includes "represent[ing] the interest of another before any judicial tribunal or officer."); *see also W. Va. Dep't of Health and Hum. Res. v. C. P.*, 245 W. Va. 130, 857 S.E.2d 622 (2021).

(1) A legal parent of the child, as defined in section 1-232 of this chapter; (2) An adult allocated custodial responsibility or decision-making responsibility under a parenting plan regarding the child that is then in effect; or (3) Persons who were parties to a prior order establishing custody and visitation, or who, under a parenting plan, were allocated custodial responsibility or decision-making responsibility.

Thus, pursuant to the statute, Mother's non-party boyfriend does not have standing in the present custody matter.

Moreover, pursuant to West Virginia Code § 48-9-209 (2024), a family court is not required to find that a person was charged and/or convicted of sexual assault in order to find the presumption of equal custody rebutted. *See Mary D. v. Watt*, 190 W. Va. 341, 348, 438 S.E.2d 521, 528 (1992) (holding that lower courts must make independent sexual abuse determinations regardless of criminal case outcomes). Rather, a family court must make findings that the offending person's conduct meets the statutory definition of sexual assault as defined in West Virginia Code §§ 61-8B-1 and 61-8D-1. *See* W. Va. Code § 48-9-209(a)(2). Therefore, we are unable to conclude that the family court committed clear error, abused its discretion, or deprived any individual of his or her due process rights when it prohibited contact between Mother's boyfriend and the minor children.

For her fourth assignment of error, Mother maintains that the family court erred by failing to consider the youngest child's custodial preference. We disagree. As Mother correctly points out, West Virginia Code § 48-9-209(f)(5)(E) provides that a court may find the presumption of equal custodial allocation rebutted and order a less than equal custodial allocation "to accommodate, *if the court determines it is in the best interests of the child*, the firm and reasonable preferences of a child under 14 years of age, but sufficiently matured that he or she can intelligently express a voluntary preference for one parent[.]" (Emphasis added).

Upon review of the record, the youngest child did not express a custodial preference. Regardless, the family court found Mother's testimony — that it was in the child's best interest to have contact with her boyfriend — "unconscionable . . . despite the court's prior findings" that Mother's boyfriend sexually assaulted her oldest child. The court specifically noted that it "must impose limits" on Mother's parenting time "[i]n order to protect [the youngest child.]" For almost one hundred years, the SCAWV has held that in a custody proceeding, "the welfare of the child is the polar star by which the discretion of the court is to be guided." Syl., *State ex rel. Palmer v. Postlethwaite*, 106 W. Va. 383, 145 S.E. 738 (1928); *see State ex rel. Cash v. Lively,* 155 W. Va. 801, 804, 187 S.E.2d 601, 604 (1972) (holding that the best interests of the child is the polar star by which decisions must be made which affect children). Thus, even if the family court had determined that the child was sufficiently mature and intelligent to express a voluntary firm and reasonable preference for Mother, such preference would not have been in the child's best interest

pursuant to the family court's detailed analysis. As such, even if the family court erred by not considering the youngest child's preference (which we decline to address) such error is harmless.

For her fifth assignment of error, Mother argues that the family court erred by decreasing her parenting time to one hour of supervised time per week because she only permitted the child to contact her boyfriend after the expiration of the domestic violence protective order. Mother also contends that the family court failed to consider how this arrangement would disrupt the youngest child's opportunities to bond with his other siblings.[7] We disagree.

As previously discussed, on April 2, 2024, Mother entered into a custody agreement with Father that "the minor children shall have *no contact of any kind* with [Mother's] significant other[,]" which was incorporated into the family court's April 23, 2024, order. (Emphasis added). This no-contact provision of their agreement contained no end date, indicating that it was to continue until further order from the court. Additionally, as previously noted, the April 23, 2024, order was not appealed. The SCAWV has consistently held, "[o]nce a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the wisdom of the settlement [do] not constitute good cause for setting it aside." *Moreland v. Suttmiller*, 183 W. Va. 621, 625, 397 S.E.2d 910, 914 (1990). Further, the family court was required to impose limitations on Mother's parenting time to protect the child.[8] Additionally, nothing in the record prohibits Mother's other two children from contact with the parties' three children. Thus, we are unable to find that the family court clearly erred or abused its discretion when it held that Mother's actions were in violation of the April 23, 2024, order.

---

[7] Mother shares two additional minor children with her boyfriend, who are not part of this proceeding.

[8] Upon a court's finding that a parent or another person regularly in the parent's household has committed domestic violence, or sexually assaulted a child, West Virginia Code § 48-9-209(b) states, "the court *shall* impose limits that are reasonably calculated to protect the child [. . .] from harm." (Emphasis added); *see Chandra T. v. Robert M.*, No. 25-ICA-271, 2026 WL 352953 (W. Va. Ct. App. Feb. 9, 2026) (remanding to family court for not making specific written findings). This section further provides several options to protect children, such as supervised parenting time, exchange of the children in a protected setting, restraints on the liable parent in their communication with the children, denial of overnight visits, and a requirement that the liable parent complete a domestic violence intervention program.

Lastly, Mother assigns error to the family court's oral statement that she did not deserve her child. It is a paramount principle of jurisprudence that a court speaks only through its orders. *See State v. White*, 188 W. Va. 534, 536 n. 2, 425 S.E.2d 210, 212 n. 2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)). While it is well established that courts must provide pro se litigants with certain accommodations,[9] their appeals must present a cognizable reason to justify setting aside a court's ruling on appeal. As Mother's argument simply illustrates displeasure with the court's oral opinion, and the family court's July 15, 2025, final order reflects no such statement, we find no basis in law to warrant relief on Mother's final assignment of error.

Accordingly, based on the foregoing, we affirm the family court's July 15, 2025, final order.

Affirmed.

**ISSUED:** February 27, 2026

**CONCURED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

[9] *See Cottrill v. Cottrill*, 219 W. Va. 51, 55, 631 S.E.2d 609, 613 (2006) (requiring courts to provide "reasonable accommodations" to pro se litigants).