IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0426

_____

**FILED**
**May 26, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

THE ESTATE OF A. RAFAEL GOMEZ,
BY AND THROUGH THE EXECUTOR OF HIS LAST WILL AND TESTAMENT,
MARK GOMEZ,
Plaintiff below, Petitioner

v.

ANDREA G. SMITH and WESTERN SURETY COMPANY,
Defendants Below, Respondents

and

MARK GOMEZ, Executor of the Estate of
Aurelio Rafael Gomez, M.D.,
DAVID BRENT GOMEZ, and
ROBERT BRIAN GOMEZ,
Defendants, Third Party Plaintiffs, & Counter Claimants Below,
Petitioners

v.

ANDREA GOMEZ SMITH and MATTHEW ERIC GOMEZ, D.O.,
Plaintiffs & Counter Defendants Below

and

KAYLA ADDISON, EMPOWER RETIREMENT, and
WESTERN SURETY CO.,
Third Party Defendants Below,
Respondents

_____

Appeal from the Circuit Court of Kanawha County
Honorable Thomas C. Evans III, Senior Circuit Judge
Civil Actions No. 17-C-1292 & 17-P-402

No. 17-C-1292, AFFIRMED

No. 17-P-402, APPEAL DISMISSED AS IMPROVIDENTLY GRANTED
_____


Submitted: January 29, 2020
Filed: May 26, 2020

Mark Gomez, Pro Se
Charleston, West Virginia
Executor for the Estate of A. Rafael
Gomez


Gary E. Pullin, Esq.
Christopher C. Ross, Esq.
Pullin, Fowler, Flanagan, Brown &
Poe, PLLC
Charleston, West Virginia
Counsel for Respondent/Third-Party
Defendant Western Surety Company


Ancil G. Ramey, Esq.
Steptoe & Johnson, PLLC
Huntington, West Virginia
Peter J. Raupp, Esq.
Katherine M. Mullins, Esq.
Steptoe & Johnson, PLLC
Charleston, West Virginia
Counsel for Respondent/Third-Party Defendant
Kayla Addison

Richard F. Neely, Esq.
Charles W. Neely, Esq.
Neely & Callaghan
Charleston, West Virginia
Counsel for Respondents Andrea
Gomez Smith and Matthew Eric
Gomez, D.O.


James C. Stebbins, Esq.
Lewis Glasser PLLC
Charleston, West Virginia
Counsel for Respondent/Third-Party
Defendant Empower Retirement

JUSTICE WORKMAN delivered the Opinion of the Court.
CHIEF JUSTICE TIM ARMSTEAD, deeming himself disqualified, did not participate in the decision in this case.
JUDGE PHILLIP M. STOWERS, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.     "Where the issue on an appeal from the circuit court is clearly a question of law . . . we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.     "'The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals.' Syllabus Point 1, *State ex rel. Askin v. Dostert*, 170 W. Va. 562, 295 S.E.2d 271 (1982)." Syl. Pt. 1, *Shenandoah Sales & Service, Inc. v. Assessor of Jefferson Cty.*, 228 W. Va. 762, 724 S.E.2d 733 (2012).

3.     "Article eight, section one *et seq*. of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia." Syl. Pt. 1, *Lane v. W. Va. State Bd. of Law Examiners*, 170 W. Va. 583, 295 S.E.2d 670 (1982).

4.     "The personal representative of the estate of a deceased acts in a fiduciary capacity. His duty is to manage the estate under his control to the advantage of those interested in it and to act on their behalf." Syl. Pt. 1, in part, *Latimer v. Mechling*, 171 W. Va. 729, 301 S.E.2d 819 (1983).

5. "The purpose of *West Virginia Rule of Civil Procedure* Rule 17(a) [1978] is to ensure that the party who asserts a cause of action possesses, under substantive law, the right sought to be enforced. Rule 17(a) allows circuit courts to hear only those suits brought by persons who possess the right to enforce a claim and who have a significant interest in the litigation. The requirement that claims be prosecuted only by a real party in interest enables a responding party to avail himself of evidence and defenses that he has against the real party in interest, to assure him of finality of judgment, and to protect him from another suit later brought by the real party in interest on the same matter. In its modern formulation, Rule 17(a) protects a responding party against the harassment of lawsuits by persons who do not have the power to make final and binding decisions concerning the prosecution, compromise, and settlement of a claim." Syl. Pt. 5, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997).

6. In litigation filed for the purpose of recovering assets for inclusion in a decedent's estate, the only substantive claim belongs to the estate. Such litigation is brought by the executor solely in his or her fiduciary capacity, and therefore the executor is not a real party in interest under West Virginia Rule of Civil Procedure 17(a).

7.　　　　A non-attorney executor or administrator of an estate who undertakes, with or without compensation and whether or not in connection with another activity, to prepare pleadings or legal instruments of any character on behalf of the estate for submission in judicial proceedings, or represents the interests of the estate before any judicial tribunal or office, is engaged in the unlawful practice of law. Any pleading or legal instrument filed by the non-attorney executor on behalf of the estate, including a complaint, answer, counterclaim, third-party complaint, or cross-claim, requires no response by any party other than a motion to strike, which shall be granted by the court.

**Workman, Justice:**

Petitioner, Estate of A. Rafael Gomez, by its executor, Mark Gomez, seeks reversal of an order entered by the Circuit Court of Kanawha County, West Virginia, dismissing the estate's lawsuit on the ground that Mark Gomez, as a non-attorney executor, is not authorized to file pleadings or otherwise represent the estate in judicial proceedings. Mark Gomez, together with his brothers David Brent Gomez and Robert Brian Gomez, has also filed an appeal in a companion case, a will contest instituted by Andrea Gomez Smith and Matthew Eric Gomez, D.O., in which Mark Gomez has filed pleadings and argued in court both on his own behalf and also on behalf of the estate.

"An old proverb warns us to take heed lest we 'walk into a well from looking at the stars.'" *Brammer v. Taylor*, 175 W. Va. 728, 729, 338 S.E.2d 207, 208 (1985) (citing *Terminiello v. City of Chicago*, 337 U.S. 1, 14 (1949)) (Jackson, J., dissenting). Although this case, which is factually and procedurally unique, appears at first glance to be quite complex, we will "bring the [single legal issue] down to earth by a [rather] long recital of facts." *Id*.

## I. FACTS AND PROCEDURAL BACKGROUND

The five grown children of Margaret J. Gomez (hereinafter "Mrs. Gomez") and Dr. A. Rafael Gomez (hereinafter "Dr. Gomez") have been at odds over the disposition of

their parents' property, both real and personal, since long before the parents died on November 2, 2015, and May 4, 2017, respectively. Although the briefs and appendix record are replete with accusations of impropriety and illegality, most leveled by petitioner Mark Gomez (hereinafter "Mark") against respondent Andrea Gomez Smith (hereinafter "Andrea") and by Andrea against Mark, the only material facts established to this point in the litigation are as follows.

On June 14, 2016, approximately ten months before his death, Dr. Gomez executed a will leaving everything to three of his children, petitioners Mark, Robert Brian Gomez, and David Brent Gomez, and specifically disinheriting his other two children, respondents Andrea and Matthew Eric Gomez, D.O.

On a date uncertain, but shortly before Dr. Gomez' death, Mark accompanied his father to City National Bank for the purpose of depositing a substantial Internal Revenue Service refund check into Dr. Gomez' bank account. For reasons that are not yet established in the record by competent evidence, third-party defendant Kayla Addison, an employee of the bank, held the check for approximately one week before putting it through.[1]

---

[1] In his filings below and again on appeal, Mark alleges, inter alia, that Ms. Addison refused to allow Dr. Gomez, who had mobility issues and needed a cane, to conduct his

2

On June 5, 2017, approximately five weeks after Dr. Gomez' death, Andrea, apparently believing that her father had died intestate, went to the Office of the Fiduciary Commissioner of Kanawha County, West Virginia, and had herself appointed administratrix of his estate. To that end, respondent Western Surety Company (hereinafter "Western Surety") underwrote a fiduciary bond to ensure Andrea's proper performance of her duties as administratrix.[2]

Two days after Andrea's appointment as administratrix of Dr. Gomez' estate, Mark went to the courthouse and filed his father's will, which appointed him (Mark) as executor; accordingly, by order dated June 7, 2017, Andrea's appointment was revoked. As executor, Mark immediately sought to have Empower Retirement (hereinafter "Empower"), which held the proceeds of two annuities which had been purchased by Dr. Gomez, remit the funds to the estate. Empower, which was on notice that there existed a

---

banking business through the drive-in window; and further that Ms. Addison insisted, based only on the representations of Andrea, that Dr. Gomez was mentally incapacitated, and therefore a duly-appointed guardian or conservator would have to establish a special account for the deposit or withdrawal of any funds. What Ms. Addison did or said, and why, are issues of disputed fact that are wholly immaterial to this appeal.

[2] The amount of this bond is variously asserted to be $10,000.00 and $500,000.00, an issue of disputed fact that is, again, immaterial to this appeal.

dispute as to which party, Mark or Andrea, was entitled to act on behalf of the estate, refused to do so absent a court order.[3]

## Civil Action No. 17-C-1292

On September 13, 2017, Mark, in his capacity as Executor of the Estate of Aurelio Rafael Gomez, M.D., filed a complaint styled *Demand for Return of Estate Property and Complaint for Conversion and Request for Immediate Relief* (hereinafter "the conversion case") against respondents Andrea and Western Surety. In this complaint, it was alleged that soon after the death of Mrs. Gomez, Andrea took possession of her mother's jewelry, alleged to be worth at least $120,000.00, and thereafter refused all demands that the items be returned. It was further alleged that "it was common knowledge within the family" that Mrs. Gomez intended for her jewelry to go to Robert Gomez, while Andrea counters that Mrs. Gomez intended the jewelry to be a gift from a mother to her only daughter. The allegation in the complaint against Western Surety was that the bond which was executed at the time of Andrea's short-lived appointment as administratrix requires Western Surety to stand good for any damages awarded against Andrea in the litigation.

---

[3] Mark alleges that Empower did eventually turn over the proceeds of the smaller of the two annuities, but filed an interpleader action and deposited the proceeds of the second, larger annuity, with the court.

4

Of significance to this appeal, Mark signed and filed the complaint in the conversion case as "Executor, Estate of A. Rafael Gomez," despite the fact that although he is law-trained, he is not an attorney licensed to practice law in West Virginia or in any other state. Both defendants filed motions to dismiss the complaint; in addition, defendant Western Surety Company filed a motion to strike the pleadings and a motion to enjoin Mark from filing any further pleadings, on the ground that he was engaged in the unlawful practice of law.[4] On May 9, 2018, the court below entered its order granting both parties' motions to dismiss and Western Surety's motion to strike, and further enjoining Mark from filing any further pleadings not only in the conversion case but also in a companion case, 17-P-402, a will contest. In this regard, it should be noted that the circuit court, which had both cases on its docket, had specifically refused to consolidate the matters.[5]

---

[4] Andrea's attorney joined in Western Surety's motion, since a favorable ruling on the unlawful practice of law issue would result in dismissal of the case brought by Mark on behalf of the estate, in which Andrea was a *defendant*. However, when the same argument was made by Western Surety in the will contest, in which Andrea was a *plaintiff,* Andrea's attorney argued against the relief sought by Western Surety, suggesting that the solution was to take the pleadings filed by Mark "and give [them] to some jackleg lawyer who will put his name on it and file it." The attorney explained his position by stating that, "I'm not arguing about the nits and lice of the procedure. I'm a plaintiff's lawyer. I hate procedure anyway." It goes without saying that this Court, having accepted this case for argument on the Rule 20 docket, does not concur with counsel's suggestion that issues involving the unlawful practice of law constitute procedural "nits and lice."

[5] *See* text *infra*.

5

On October 25, 2017, Andrea and Matthew Eric Gomez, D.O., filed a complaint styled *Petition to Invalidate and Hold for Naught the Last Will and Testament of Aurelio Rafael Gomez, M.D. deceased pursuant to W. Va. Code 41-5-11 [1994]* (hereinafter "the will contest"), which was both a will contest filed against Mark as executor of the estate of Dr. Gomez, and also a fraud and conversion action against Mark individually. Thereafter, the case blossomed and grew as Mark filed counterclaims against the plaintiffs and third-party claims against Western Surety, Kayla Addison, and Empower. Additionally, in an attempt to forestall any objection to his representation of the interests of the estate and its other beneficiaries, he joined Robert Brian Gomez and David Brent Gomez as party defendants, each acting pro se.

Following an unsuccessful attempt by Robert Gomez to remove the case to federal court, and thereafter a barrage of motions filed by Mark on issues ranging from his request that the circuit court punish Andrea for alleged violations of the Health Insurance Portability and Accountability Act of 1966, and specifically 42 U.S.C. 1320d-6(a)(2),[6] to his request that the court take judicial notice of weather conditions on certain dates, the

---

[6] Simply put, 42 U.S.C. § 1320d-6(a)(2) makes it an offense for a person to knowingly, and in violation of the Act, obtain individually identifiable health information relating to an individual. Mark alleged that Andrea was in violation of this provision when she, during her two-day window as administratrix of her father's estate, obtained copies of his medical records.

6

case came before the court on Mark's motions (1) to dismiss based on lack of specificity in the complaint, (2) to dismiss the individual claims against him based on lack of standing, (3) to strike private medical information (the medical records of Dr. Gomez), (4) for summary judgment, and (5) to consolidate the will contest with the conversion case. By order entered on April 17, 2018, the court denied the first three motions on the merits; denied the motion for summary judgment as "entirely premature," inasmuch as almost no discovery had been done (Mark having refused to respond to interrogatories and requests for production); and denied the motion to consolidate. In its order, the court further dismissed the conversion case, despite the fact that it had already been dismissed more than a month earlier, by order entered on May 9, 2018. *See* text *supra*.

**Appellate Proceedings**

On May 11, 2018, Mark filed notices of appeal in both cases, which appeals were docketed and ultimately briefed and set for oral argument on what we have determined to be the only issue ripe for resolution at this time: whether the court below erred in dismissing Civil Action No. 17-C-1292, the conversion case, on the ground that Mark, a non-lawyer executor, cannot file pleadings and make legal arguments on behalf of the estate.[7] Thereafter, on May 31, 2018, in an apparent effort to forestall application of

---

[7] Because of the circuit court's ruling in the conversion case prohibiting Mark from filing any further pleadings in the will contest, and the court's ruling in the will contest purporting to dismiss the conversion case, it was unclear at this early stage of the appellate

7

the circuit court's ruling in the conversion case to the will contest,[8] Mark filed an emergency petition in this Court for stay of proceedings in both cases. By Order dated June 12, 2018, this Court granted the stay "pending resolution of the appeal."

## II. STANDARD OF REVIEW

It is well established in this Court's jurisprudence that "'[w]here the issue on an appeal from the circuit court is clearly a question of law . . . we apply a *de novo* standard of review. Syl. Pt. 1 [in part], *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).' Accordingly, our review is plenary." *Steager v. Consol Energy, Inc.*, 242 W. Va. 209, __, 832 S.E.2d 135, 143 (2019).

---

proceedings whether either or both of the underlying cases were actually ripe for appeal. The parties did little to clear up this confusion. In their joint brief, counsel for Western, Kayla Addison and Empower skated lightly over the fact that Addison and Empower are parties only to the will contest, in which the lower court's order is wholly interlocutory. Indeed, counsel for Ms. Addison, who took the lead in oral argument in this Court, never made the obvious argument that the appeal in the will contest -- the only case to which his client was a party -- was improvidently granted and should be dismissed. Neither counsel for Andrea nor counsel for Western Surety, the only parties to the conversion case, made oral argument.

[8] In reliance on the court's ruling in the conversion case that all pleadings filed by Mr. Gomez were void ab initio, counsel for the third-party defendants in the will contest had already prepared and circulated a proposed order dismissing themselves from that case. As a result of this Court's stay order, this order has never been ruled upon by the circuit court; indeed, it is unclear whether it was even presented to the court prior to the stay order.

8

## III. DISCUSSION

### General Principle

At the outset, we note that few principles are as firmly established in our jurisprudence as this: "'[t]he exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals.' Syllabus Point 1, *State ex rel. Askin v. Dostert*, 170 W. Va. 562, 295 S.E.2d 271 (1982)." Syl. Pt. 1, *Shenandoah Sales & Serv., Inc. v. Assessor of Jefferson Cty.*, 228 W. Va. 762, 724 S.E.2d 733 (2012); *see also State ex rel. Frieson v. Isner*, 168 W. Va. 758, 777, 285 S.E.2d 641, 654 (1981) ("[i]t cannot be questioned that the Legislature cannot restrict or impair the power of the judiciary to regulate the practice of law by enacting a statute permitting or authorizing laymen to practice law."); *W. Va. State Bar v. Earley*, 144 W. Va. 504, 536, 109 S.E.2d 420, 439-40 (1959) ("[i]n the exercise of their inherent power the courts may supervise, regulate and control the practice of law by duly authorized attorneys and prevent the unauthorized practice of law by any person, agency or corporation"). This principle has a constitutional basis, as we squarely held in Syl. Pt. 1 of *Lane v. W. Va. State Bd. of Law Examiners*, 170 W. Va. 583, 295 S.E.2d 670 (1982): "Article eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia."

In *Shenandoah Sales*, we examined a legislative enactment, West Virginia Code § 11-3-25(b), which permitted a corporation to be represented by either an attorney or a non-lawyer agent when appealing a decision of the board of equalization and review.

9

Following a review of the constitutional provision and pertinent authorities cited *supra*, we held that the statute was unconstitutional insofar as it "allow[ed] a non-lawyer agent to appeal a ruling of the board of equalization and review to the circuit court and engage in activities which constitute the practice of law," and was thus "a legislative encroachment on this Court's exclusive authority to define, regulate and control the practice of law." 228 W. Va. at 770, 724 S.E.2d at 741. We distinguished our earlier case of *Frieson,* in which we upheld the constitutionality of West Virginia Code § 50-4-4a (1981), a statute which authorized a party to appear by a lay agent in magistrate court, holding that because magistrate court was "the people's court" and was not a court of record,[9] "the intrusion upon the judicial power is minimal and inoffensive, and is consistent with and intended to be in aid of the aims of the Court with respect to the regulation of the practice of law." 228 W. Va. at 770, 724 S.E.2d at 741.

What constitutes the practice of law was succinctly set forth in *Lawyer Disciplinary Bd. v. McCloskey*, 238 W. Va. 165, 793 S.E.2d 23 (2016), where we held that,

> [t]his Court's long-standing 'Definition of the Practice of Law' expressly states that the practice of law includes "undertak[ing], with or without compensation and whether or not in connection with another activity, to prepare for another legal instruments of any character" or "represent[ing] the interest of another before any judicial tribunal or officer[.]"

---

[9] In the case of *In re A Purported Lien or Claim Against DeBlasio*, No. 13-1306, 2014 WL 4289334, at *3 (W. Va. Aug. 29, 2014) (memorandum decision), we reemphasized the distinction between actions within the regular duties of a corporate manager, such as filing liens to preserve a claim, and "representing another in a *court of record*." (Emphasis supplied).

> Michie's West Virginia Code Annotated State Court Rules, Definition of the Practice of Law, in part, at 965; *accord Shenandoah Sales & Service, Inc.*, [*supra*] (recognizing that non-lawyer corporate official engaged in authorized practice of law when filing documents in court).

*Id.* at 171, 793 S.E.2d at 29. In this regard, we note at the outset that the question of whether a non-lawyer executor's preparation of documents ordinarily required to be filed with the Office of Fiduciary Commissioner in the course of settling the estate, i.e., notices to creditors or potential heirs, inventory lists, and the like, falls within the "legal instruments of any character" language set forth above, is not an issue under the facts of this case. Therefore, any discussion by the Court as to this matter would be obiter dicta.[10] Rather, the question before us is whether Mark's representation of the interests of another, the Estate of Aurelio Rafael Gomez, M.D., in a judicial tribunal, constitutes the unlawful practice of law.

**Civil Action No. 17-C-1292**

As noted previously, the conversion case, filed by Mark as executor of, and on behalf of, the estate of Dr. Gomez, was dismissed by the court below on the ground that

---

[10] "'[C]ourts [will not] resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies. *Mainella v. Board of Trustees*, 126 W.Va. 183, 27 S.E.2d 486. 26 C.J.S., Declaratory Judgments, Section 30, page 107.' *Farley v. Graney,* 146 W.Va. 22, 30, 119 S.E.2d 833, 838 (1960)." *W. Va. Human Rights Comm'n v. Esquire Grp., Inc.*, 217 W. Va. 454, 463, 618 S.E.2d 463, 472 (2005).

"all pleadings, including the Complaint, filed by the non-lawyer Mark Gomez as 'pro se Executor,' are void ab initio and are hereby deemed to be a nullity having no effect as to any of the Defendants named therein." Thus, the sole issue before this Court on appeal in the conversion case is whether the court was correct in concluding that Mark's filing of a civil action on behalf of the Estate of Aurelio Rafael Gomez, M.D., and his subsequent filing of motions and pleadings in that action, constituted the unlawful practice of law. To answer the question presented, we examine statutory law, rules of practice and procedure, and case law from this Court. Additionally, we examine case law from other jurisdictions in which the courts have unanimously concluded that a non-attorney executor cannot represent the estate in court proceedings, with one narrow exception not present under the undisputed facts of this case.

West Virginia Code § 30-2-4 establishes the misdemeanor crime of unlawful practice of law and defines the offense in subsection (a) in relevant part as "practic[ing] or appear[ing] *for another* in a court in this state." (Emphasis supplied). Further, in construing the statute, we have held that the unauthorized practice of law is not limited to proceedings in court, but includes services for another rendered in furtherance of such proceedings, such as

> the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal

12

> instruments of all kinds, and in general all advice to client and all action taken for them in matters connected with the law.

*Earley*, 144 W. Va. at 520, 109 S.E.2d at 431.

Building on this framework, Rule 4.03 of the West Virginia Trial Court Rules states:

> Every party to proceedings before any court, except parties appearing pro se, shall be represented by a person admitted to practice before the Supreme Court of Appeals of West Virginia and in good standing as a member of its bar and may be represented by a visiting attorney as provided by Rule 4.02.

*See also* W. Va. R. Civ. P. 11(a) (providing that "every pleading, motion and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party."). Consistent with this latter mandate, we have held that an unverified complaint that is not signed by either the complainant or counsel acting for the complainant, is a "vagrant paper" which cannot be treated as a pleading upon which relief may be granted or denied. *See Morris v. Gates*, 124 W. Va. 275, 277-78, 20 S.E.2d 118, 120-21 (1942).

Mark attempts to distinguish his representation of the estate from the statutory prohibition on "practicing for another" by arguing that as executor of his father's estate having the duty, inter alia, to marshal and recover the estate's assets, *he* is the real party in

1

interest in the litigation and is therefore representing *himself* pro se.[11]  In furtherance of this argument, petitioner's brief  on appeal to this Court was signed by "Mark Gomez, *For Himself*, in his individual capacity as Executor of the Estate of Aurelio Rafael Gomez." However, we note that this attempt to "change roles" was an unavailing, after-the-fact, tactic on Mark's part, as he did not name himself as plaintiff in the underlying lawsuit, but rather brought the case solely on behalf of "The Estate of A. Rafael Gomez, *By and Through* the Executor of his Last Will and Testament, Mark Gomez."   (Emphasis supplied).  *See Thurmond v. Guyan Valley Coal Co.*, 85 W. Va. 601, __, 102 S.E. 221, 223 (1920) (notwithstanding plaintiffs' after-the-fact argument that they *could* have brought the action in their individual capacity, "from an examination of the allegations of the

---

[11] Alternatively, Mark contends that he and his brothers, David and Robert Gomez, are the real parties in interest in this case, since they are the named beneficiaries under Dr. Gomez' will and thus have a justiciable interest in the settlement of the estate: the amount of their respective inheritances would be increased by the estate's recovery of the property allegedly stolen by Andrea.  Accordingly, says Mark, each of the three can represent himself pro se, with Mark Gomez taking the lead.  We will not address this contention, as Mark never attempted to bring his brothers into the conversion case as plaintiffs, and never argued to the circuit court that the beneficiaries were the real parties in interest to this suit which was filed *on behalf of the estate*. Rather, Mark made this argument in Andrea's will contest, when he added David and Robert Gomez as party *defendants*. *See, e.g., Moore v. Goode*, 180 W. Va. 78, 375 S.E.2d 549 (1988).  In view of our holding that the appeal in the will contest was improvidently granted, *see* text *infra*, this issue is not presently ripe for resolution. *See generally Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 522-23, 745 S.E.2d 556, 560-61 (2013); *Robinson v. Pack,* 223 W.Va. 828, 831, 679 S.E.2d 660, 663 (2009).

declaration, it is clear that the plaintiffs *intended* to sue in their representative character.") (emphasis added). And in any event, in light of this Court's precedents, petitioner's argument fails on the merits.

This Court has held that "Rule 17(a) [of the West Virginia Rules of Civil Procedure] allows circuit courts to hear only those suits brought by persons who possess the right to enforce a claim and who have a significant interest in the litigation." *Keesecker v. Bird*, 200 W. Va. 667, 677, 490 S.E.2d 754, 764 (1997). In the instant case, although Mark, as executor, has the undisputed right to *enforce* a claim of the estate, he personally does not have a significant *interest* in the estate's claim. In this latter regard, it is so well established as to be axiomatic that "[t]he personal representative of the estate of a deceased acts in a *fiduciary capacity*. His duty is to manage the estate under his control to the advantage of those interested in it and to act on their behalf." Syl. Pt. 1, in part, *Latimer v. Mechling*, 171 W. Va. 729, 301 S.E.2d 819 (1983); *see also Claymore v. Wallace*, 146 W. Va. 379, 388-89, 120 S.E.2d 241, 247 (1961) ("An executor is a trustee in a broad sense, that of winding up the estate and dividing it, a temporary duty, but not in the strict and narrow sense of undertaking the permanent duty of investing a sum of money and disposing of the income and increments."). In short, in the event of a recovery in a lawsuit filed on behalf of a decedent's estate, said recovery is payable to the estate and thereafter distributed by the executor according to the terms of the will; the recovery is not payable to the executor, to do with as he or she pleases.

3

Accordingly, we hold that in litigation filed for the purpose of recovering assets for inclusion in a decedent's estate, the only substantive claim belongs to the estate. Such litigation is brought by the executor solely in his or her fiduciary capacity, and therefore the executor is not a real party in interest under West Virginia Rule of Civil Procedure 17(a).

Having concluded that the only justiciable interest in this case is held by the estate, not by the executor or the beneficiaries, we come to the primary issue in this case: whether the circuit court correctly held that a non-attorney executor's representation of the estate in court proceedings constituted the unlawful practice of law. Although we have never had occasion to squarely address this specific issue, every state to consider the matter has concluded that the executor or administrator of an estate cannot represent the estate in court proceedings because "the personal interests of the estate, other survivors, and possible creditors will be affected by the outcome of the proceedings." *Norman v. Temple Univ. Health Sys.*, 208 A.3d 1115, 1120 (Pa. Super. Ct. 2019) (internal citation omitted). Further, "[g]iven the complex legal issues that may arise during the representation of an estate . . . prohibiting a non-attorney from representing an estate is essential to protecting the interests of the public." *Id.*, 208 A.3d at 1120; s*ee also Ex Parte Ghafary*, 738 So.2d 778, 780-81 (Ala. 1999) (a non-lawyer executrix cannot represent the interests of an estate, which is "a separate legal entity with interests other than her own," in a legal action); *In re Estate of Mattson*, 131 N.E.3d 578, 580 (Ill. App. Ct. 2019) ("the suit should be dismissed

because Daniel, as a non-attorney, has impermissibly instituted legal proceedings on behalf of another, i.e., the estate of Carol Mattson."); *Lusk v. Crown Pointe Care Ctr.*, 135 N.E.3d 414, 419 (Ohio Ct. App. 2019) ("An administrator's duties pertaining to the administration of an estate do not change the principles precluding a non-lawyer from engaging in the practice of law.") (internal citation omitted); *In re: Estate of Rowley*, 84 A.3d 337, 342 (Pa. Cmwlth. 2013) ("Given the complex legal issues that may arise during the representation of an estate . . . prohibiting a non-attorney from representing an estate is essential to protecting the interests of the public."); *Steele v. McDonald*, 202 S.W.3d 926, 928 (Tex Ct. App. 2006) ("Courts in other jurisdictions which have addressed this issue have virtually all concluded that the representative of an estate may not appear *pro se* in behalf of the estate.");[12] *cf. Davenport v. Lee*, 72 S.W.3d 85, 90-91 (Ark. 2002) ("A person who is not a licensed attorney and who is acting as an administrator, executor or guardian cannot practice law in matters relating to his trusteeship on the theory that he is practicing for himself … [he is] acting for others who would ordinarily be beneficiaries."); *Ellis v. Cohen*, 216, 982 A.2d 1130, 1134  (Conn. App. Ct. 2009) ("Although the [wrongful death] statute vests standing to bring such action exclusively in the administrator or the executor, it does not create an individual right of action. Thus, an executor who brings an action pursuant to

_____

[12] The dissenting opinion in *Steele* is the sole authority upon which Mark relies for his argument that a non-attorney executor of an estate should be permitted to represent the estate in court proceedings.  In this regard, we note that the dissenting judge based his opinion on what he termed the state's "very effective and efficient administration of estates using *truly independent administrators*[.]" *Steele*, 202 S.W.3d at 930 (emphasis added). In the case before us, Mark cannot be deemed a "truly independent administrator" since he is not only the executor of his father's estate but also one of three beneficiaries under the will.

the statute does so in his representative, fiduciary capacity, not as an individual plaintiff. Because the executor's 'own cause' is not before the court, he has no right of self-representation.") (internal citations omitted); *In re: Guetersloh*, 326 S.W.3d 737 (Tex. Ct. App. 2010) (holding, by analogy to case law prohibiting non-attorney from appearing pro se in his capacity as executor of estate, that trustee of a trust is likewise not the real party in interest in a suit brought to terminate and distribute the proceeds of the trust).

The one exception to the jurisdictions' unanimity on this point is found in *Heath v. Teich*, No. 06AP-1018, 2007 WL 1501727 (Ohio Ct. App. 2007), where the court suggested that there was a limitation to the general rule, specifically: that a non-attorney executor may represent the estate in judicial proceedings if the executor is the sole heir under the will and there are no judgments or other claims against the estate.[13] *Heath*, although something of an outlier in state court jurisprudence, is in alignment with the rule in federal court.[14] *See, e.g.*, *Murray v. City of Philadelphia*, 901 F.3d 169, 171 (3rd Cir. 2018) ("If an estate has one or more beneficiaries besides the administrator, then the case

---

[13] In a subsequent case, however, the Court of Appeals of Ohio cast doubt upon the validity of *Heath* by pointing out that "any suggestion contained therein concerning circumstances involving only one beneficiary under a will is dictum." *Lusk*, 135 N.E.3d at 419.

[14] In the federal cases, the issue is usually framed as a determination of whether a non-attorney executor can plead and prosecute a case on behalf of the decedent's estate pursuant to 28 U.S.C. §1654 (2000), which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

6

is not the administrator's own because the interests of other parties are directly at stake."); *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210-11 (2016) ("The circuits that have addressed that issue tend to refuse to hear *pro se* survival claims where there are multiple beneficiaries or creditors. Two circuits, going further, affirmatively hold that [the estate representative] may do so *pro se* if he is the estate's sole beneficiary and there are no creditors.");[15] *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007) ("administrators do not act on behalf of themselves, but on behalf of all of the beneficiaries of an estate. Consequently, if the administrator is not the sole beneficiary of the estate, then he or she may not represent the estate in court."); *Jones v. Corr. Med. Serv., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005) ("In this case, Adrian Jones is not the only beneficiary/creditor of Dennis Jones's estate.  Thus, as a non-attorney, Adrian Jones may not engage in the practice of law on behalf of others."); *Iannaccone v. Law*, 142 F.3d 553, 559 (2d Cir. 1998) ("[A] representative of an estate may not proceed *pro se* in an action by the estate where the estate has beneficiaries or creditors other than the representative.") (internal citation omitted); *cf. Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 244 (4th Cir. 2020) (holding that a pro se plaintiff cannot maintain a qui tam suit, since "[although] the relator party has *an* interest, it is not the *sole* interest at stake.").

---

[15] The two cases referenced are *Bass v. Leatherwood*, 788 F.3d 228, 230-31 (6th Cir. 2015) and *Guest v. Hansen*, 603 F.3d 15, 19-21 (2d Cir. 2010).

As noted, Mark cannot point to a single case, state or federal, that supports his position with respect to this issue, and our research has not disclosed any authority on this point sufficient to even provide him with a viable "talking point." For a variety of reasons, a non-lawyer executor is not equipped, and therefore is not authorized, to represent the interests of the estate in court proceedings. First, complex issues may arise in estate litigation that require the type of research and in-depth legal analysis that only an attorney can bring to the table; and conversely, a straightforward case brought on behalf of an estate may be unduly complicated by a non-attorney executor who is not versed in the rules of evidence, particularly those rules dealing with materiality and relevance.[16] Second, the decedent's estate, the decedent's heirs and beneficiaries, and the decedent's creditors who would be affected by the outcome of any proceedings, may have varying and possibly conflicting interests in the outcome of the case. Thus, as a legal matter the executor can in no way be considered to be acting pro se, as the law is clear that he or she cannot represent the interests of another in court proceedings. Third, allowing a non-attorney executor to represent the estate in court is antithetical to the public interest in the reliability and integrity of all judicial proceedings. Accordingly, we hold that a non-attorney executor or administrator of an estate who undertakes, with or without compensation and whether or not in connection with another activity, to prepare pleadings or legal instruments of any character on behalf of the estate for submission in judicial proceedings, or represents the

---

[16] The appendix record in this case provides ample evidence of this, filled as it is with hundreds of pages of immaterial pleadings and documents.

8

interests of the estate before any judicial tribunal or office, is engaged in the unlawful practice of law. Any pleading or legal instrument by the non-attorney executor on behalf of the estate, including a complaint, answer, counterclaim, third-party complaint, or cross-claim, requires no response by any party other than a motion to strike, which shall be granted by the court.

In summary, we affirm the judgment of the court below in Civil Action No. 17-C-1292, the conversion case, granting both Andrea's and Western Surety's motions to dismiss on the ground that all pleadings filed on behalf of the Estate of A. Rafael Gomez by Mark, a non-attorney executor, and all arguments made by him in court proceedings, constituted the unlawful practice of law.[17]

---

[17] Counsel for respondents Western Surety, Kayla Addison, and Empower have submitted case law to this Court in support of a further holding that "the briefs prepared by [Mark] and submitted to this court on behalf of [the estate] are nullities," *Beasley v. Poole*, 63 So.3d 647, 650 (Ala.Civ.App. 2010), and "[w]hen a non-attorney files a notice of appeal and attempts to prosecute the appeal in court as counsel on behalf of another, such constitutes the unauthorized practice of law for which the pleadings filed should be stricken and the proceeding thus attempted dismissed." *Lusk*, 135 N.E.3d at 419. We decline to apply such a draconian rule where, as here, the issue presented was an issue of first impression in this jurisdiction. It was for that reason we granted Mark's application for a stay, set his petitions for appeal on the Rule 20 docket, and permitted him to present oral argument, which he did with decorum and grace, albeit unsuccessfully.

**Civil Action No. 17-P-402**

In the will contest filed by Andrea and Matthew Eric Gomez, D.O., the only rulings made by the circuit court to date are those denying Mark's motions to dismiss, to strike, and to consolidate with the conversion case, as well as his motion for summary judgment, which the court deemed to be premature. Without question, all of these rulings are interlocutory. The case is ongoing (albeit stayed by this Court); discovery is ongoing, as Mark has not yet complied with the discovery orders of the court; and the court has not made any rulings that are dispositive of any issues, including the issue of unlawful practice. In this latter regard, since the will contest involves claims against the estate and against Mark personally, as well as counterclaims, cross claims, and third party claims filed by Mark on behalf of the estate and by him personally, a careful claim-by-claim analysis will be required to determine which claims and defenses Mark can and cannot handle pro se.

West Virginia Code § 58-5-1 provides that appeals may be taken in civil actions from "a final judgment of any circuit court or from an order of any circuit court constituting a final judgment." Consistent therewith, we have held that "[t]ypically, interlocutory orders are not subject to this Court's appellate jurisdiction." *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 522, 745 S.E.2d 556, 560 (2013) (citing *Coleman v. Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995)) ("The usual prerequisite for our appellate jurisdiction is a final judgment, final in respect that it ends the case."). "This 'rule of finality' is not an absolute rule," however, as this Court has carved out a "narrow category of orders that are subject to permissible interlocutory

appeal." *Id.* Those include interlocutory orders specifically made appealable by statute or rule; prohibition matters; certified questions; judgment orders entered pursuant to West Virginia Rules of Civil Procedure 54(b); and orders that fall within the "collateral order" doctrine.[18] Included among the latter are orders denying a motion for arbitration, and orders denying a motion to dismiss on grounds of immunity.

In the instant case, our careful review of the record reveals that the court below has not made any rulings in the will contest which conclusively determine any issue in the case. Further, no party to the case has argued that any of the court's rulings in the will contest fall within the "narrow category" of interlocutory rulings subject to immediate appeal, and no party has sought review on a writ of prohibition. Accordingly, we find that the appeal in Civil Action No. 17-P-402, the will contest, was improvidently granted, and we dismiss the appeal.

## IV. CONCLUSION

For the reasons set forth herein, the judgment of the Circuit Court of Kanawha County, West Virginia, in Case No. 17-C-1292, the conversion case, is affirmed. The

---

[18] The collateral order doctrine "may be applied to allow appeal of an interlocutory order when three factors are met . . . [when the order] (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Credit Acceptance*, 231 W. Va. at 523, 745 S.E.2d at 561 (citing *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566 n.2, 401 S.E.2d 908, 912 n.2 (1991)).

petitioner's appeal in Case No. 17-P-402, the will contest, is dismissed as improvidently granted.

No. 17-C 1292     Affirmed;

No. 17-P-402     Appeal Dismissed as
                                    Improvidently Granted.